A. L. HENDERSON v. THE STATE.

No. 3982.    Decided October 21, 1908.

Rehearing Denied March 20, 1909.

**1.—Embezzlement—Husband· and Wife—Separate Property—Agency.**

Where upon trial for embezzlement of a horse, the husband in the pres-
ence of the wife authorized the defendant to sell the horse with the knowledge
and consent of prosecutor's wife, the agency of the husband was implied, and
the defendant thereby became the valid agent of the husband, to sell the
horse which was the separate property of the wife. Following McGee v.
White, 23 Texas, 180, and other cases.

**2.—Same—Proceeds of Sale.**

Where upon trial of embezzlement of a horse the evidence showed that the

defendant as agent of the prosecutor disposed of the horse and appropriated the proceeds, the contention that he was guilty of embezzlement of the proceeds of the sale of the horse, if guilty at all, and not of embezzlement of the horse was untenable. Following Epperson v. State, 22 Texas Crim. App., 694, and other cases.

### 3.—Same—Charge of Court—Appropriation—Fraudulent Intent—Conversion.

Where upon trial of embezzlement of a horse the court in his charge instructed the jury that they must find beyond a reasonable doubt that the defendant at the time of the sale or pledge of the horse must have had the fraudulent intent to appropriate the proceeds of said sale or pledge to his own use, and that a subsequent intent to appropriate would not make him guilty of the offense charged, there was no error in refusing a requested similar charge on the same subject.

### 4.—Same—Conversion—Intent.

Upon trial for embezzlement of a horse where the evidence showed the defendant either sold or pledged the horse intrusted to him as agent to sell for the owner, and appropriated the proceeds to his own use, it was not required in the court's charge that the jury must find as a fact that the defendant sold or pledged the horse as his own property; there being no question that the defendant dealt with the horse as his own property. And the question was whether the defendant at the time of the conversion had the specific intent to defraud the owner.

### 5.—Same—Specific Intent—Conversion.

Upon trial of embezzlement of a horse where the evidence showed that the defendant was authorized by the owner to sell the horse and turn over the proceeds to the latter, and that the defendant either sold or pledged the horse and appropriated the proceeds to his own use, the question was whether the defendant at the time of the sale had in his mind the specific intent to misapply the proceeds of such sale or pledge; if he did he was guilty of embezzlement of the horse, and where the court properly submitted this issue, there was no error. Following Leonard v. State, 7 Texas Crim. App., 417.

### 6.—Same—Charge of Court—Grouping Facts.

Where upon trial of embezzlement of a horse the court's charge left it to the jury to find the facts with reference to agency, possession and sale of the alleged horse, there was no error.

Appeal from the District Court of Titus. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of embezzlement of a horse; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Rolston & Ward,* for appellant.—On question of court's charge: Huggins v. State, 42 Texas Crim. Rep., 364, 60 S. W. Rep., 52, and cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged by indictment in the District Court of Titus County with the embezzlement of a certain horse alleged to be the property of one J. J. Huggins, same being of the alleged value of $125. Appellant was put upon trial at the

October term, 1907, of said court, and was by the jury convicted and his punishment assessed at confinement in the penitentiary for a period of two years.

The facts briefly show that appellant and Huggins were intimate friends, Huggins having married a cousin of appellant's wife, who had been raised by them from her earliest infancy. Mrs. Huggins owned a horse, which had been given to her by her father some three or four weeks before he was intrusted to appellant to be sold. It seems that a short time before the horse was sold that appellant with his wife was at the residence of Huggins, and at the table one day Huggins said to appellant that he believed he would get him to sell Old George, to which appellant replied "all right," and wanted to know what Huggins would take for him, to which it was replied that he would take $125. Appellant said that he could get $150 for him from one Fitzpatrick tomorrow if the horse was not afraid of the train. Thereupon Huggins said to him if he could get $150 he could have all over $125. At this time appellant was a live stock insurance agent, and the horse was accordingly turned over to him with authority to drive around getting him accustomed to the train and with the expectation that he could and would be sold to Fitzpatrick for the sum of $150. While Huggins testified, both on direct and cross-examination that appellant was not authorized to sell the horse to anyone except Fitzpatrick, he did say that if appellant had brought him $125 as a result of the sale to anyone else it would have been satisfactory. Mrs. Huggins testified that appellant had stated at the table that he could sell the horse, Old George, for $150 to one Mr. Fitzpatrick, provided he was not afraid of the train, and that her husband thereupon told him to sell him if he could get $125, and all over that he could have; that that was the trade, providing if he did not sell him before we wanted him to work we could have him. She further states that "he was to deliver him back to us; the horse belonged to my father; he gave him to me. It was really my horse." She further adds that the trade was made at the eating table; that they had sat down to dinner at their house—at Mr. Huggins' house. Appellant and his wife were both sworn as witnesses, and both agreed that all the conversation with respect to the horse was had at the house of Huggins and in the presence of his wife. The authority to sell was recognized by both appellant and his wife, but they differ as to the amount for which he was to sell him. The evidence shows that sometime after this, appellant took the horse to Pittsburg, in Camp County, and there sold him to one Kesterson for $60. When next heard from, appellant was in Laredo in a hospital, as he claimed, and very sick. His claim when first heard from was that he had not sold the horse to Kesterson, but had pledged him for $60, and that Huggins could get his horse, in which he manifested a willingness to aid him. He also agreed later to pay for the horse, but in

view, as he claimed, of Huggins sending some newspaper clippings to his mother he afterwards repudiated this agreement and declined to come to any accommodation about the matter. Appellant on the witness stand testified that while in Pittsburg he got drunk and was placed in jail by the officers, and he let Mr. Kesterson take the horse, on which he loaned him some money, but that he was to have the horse back when he returned and paid him the money and paid for keeping the horse. It seems, however, according to his testimony, he got drunk again and went to Jefferson, intending to go to Marshall, where his mother lived, but he got drunk at Jefferson and the next thing he remembered he was in a hospital in Laredo, where it seems he had been some two or three weeks. Several reasons are suggested why the judgment of conviction should be reversed.

1. Among other things, it is urged that inasmuch as the horse in question belonged to Mrs. Huggins, that the facts do not show such authority on the part of her husband as to have lawfully placed him in the possession of appellant with authority to sell him, and that the acts of Huggins in so doing was without authority, and as a corollary of this, that the possession of appellant was not under a valid agency. We think this position can not be sustained. It is said that the husband may be appointed as the wife's agent, though he is not necessarily such. It can not be presumed that because he is her husband he is likewise her agent, for this relation of principal and agent is one of fact to be proved, and not presumed. Magee v. White, 23 Texas, 180. Again, it is said a husband has no authority to act for his wife in such manner as to bind her separate interests, unless he is expressly or impliedly authorized to do so, and that there is no implication of law that he is so authorized in fact. Etheridge v. Price, 73 Texas, 597. It is said, however, by Mr. Speer in his valuable work on the law of married women, p. 36, that "in the very nature of things, slight proof would be sufficient to establish between the husband and wife the further relation of principal and agent." Mobley v. Leophart, 47 Ala., 257; Toledo, W. & W. R. Co. v. Brooks, 31 Ill., 293; American Express Co. v. Lankford (Ind. Ter.), 39 S. W. Rep., 817. Such agency is, we think, a question of fact proven as any other fact in the case by such legal evidence as pertinently establishes such relation. In this case there can, as we conceive, be no sort of doubt that such agency existed. The statements of Huggins, his direction and authority for selling the horse was made in the presence of the wife; the matter was discussed between all the parties and with her knowledge and consent the property was taken away to be sold on terms agreed upon. We think the true test of such agency and the proof thereof would be, would a purchaser have been protected where the sale was confessedly made in accordance with the terms and authority given? If so, it must result in the finding of such agency. This view is strengthened by the fact that there is no

evidence disputing the authority to sell, or the presence of Mrs. Huggins, her participation in the conversation and her ready acquiescence in all that was said and done.

2.   Again, it is suggested that the embezzlement, if such there was, was an embezzlement of the money the proceeds of the sale of the horse and not an embezzlement of the horse.   This contention is unfounded and has been directly decided adversely to this view. The case of Epperson v. State, 22 Texas Crim. App., 694, is a case somewhat similar to the one at bar.   The following charge was given: "If you believe from the evidence that the defendant received from the said Caylor the organ in question, under an agreement that the defendant should act as the agent of the said Caylor in the sale of said organ, and that defendant should sell said organ, and pay over to and deliver to said Caylor a certain sum in money, or notes, that defendant should secure from the sale of said organ; and you further believe that defendant sold said organ as his own property, and not as agent for said Caylor, and that at the time of said sale the defendant had the fraudulent intent to appropriate the proceeds of said sale to his own use, and that in pursuance of said intent the defendant afterwards appropriated the proceeds of said sale to his own use and benefit, without the consent of said Caylor, the defendant would, under such circumstances, be guilty of embezzling the organ.   But if you believe it was the intention of the defendant to act in good faith towards said Caylor, and carry out his alleged agreement, and that he, after said sale, conceived for the first time the intention to appropriate the proceeds of the sale, he would not be guilty of embezzling the organ."   In discussing this charge Judge Willson says:  "We do not think the exceptions to this paragraph of the charge are well grounded.   As we understand the law, it clearly and distinctly states the correct rule, as announced in the decisions upon this subject."   Quoting from the earlier case of Leonard v. The State, 7 Texas Crim. App., 417, the opinion proceeds:  "We are of the opinion that, notwithstanding appellant may have had authority to make a sale of the cotton alleged to have been embezzled, yet if he sold the same with the formed intention to defraud the owner and to convert it to his own use and benefit, he is as much guilty of embezzlement of the cotton as if he had no authority to make such sale."   Further, Judge Willson, in the case first cited, says:  "We are of the opinion that said paragraph of the charge is not only correct in principle, but that it was applicable to and demanded by the evidence in the case, and that there is sufficient evidence to warrant the finding of the jury that at the time defendant sold the organ he entertained the fraudulent purpose of appropriating the proceeds of such sale to his own use."   It can not therefore, we think, be contended that there was as applied to the facts of this case an embezzlement of the proceeds, that is, the $60 arising from the sale of the horse.   If the amount received

for the property is the test, and ·if that is what is embezzled, and not the property the possession of which is entrusted in confidence, then it would follow that if the property had been sold for less than $50, the offense would be a misdemeanor, and not a felony.    Or if it is covetously alienated under the guise of a gift to secure some sinistrous benefit to the agent, it would not be a crime at all, because this doctrine would lead to such absurdity, as we conceive, as to make the adoption of such a view impossible.

3.    On the trial the court, among other things, charged the jury as follows: "Now, if you believe from the evidence, beyond a reasonable doubt, that J. J. Huggins owned and had the actual possession of a horse, and that on or about the 1st day of September, 1906, in Titus County, Texas, he delivered the same to the defendant, and that the defendant received the actual possession of said horse from the said Huggins on or about the 1st day of September, 1906, in Titus County, Texas, and that said horse was delivered by said Huggins to defendant, as his agent, and was received by defendant from said Huggins, as his agent, under and by virtue of an agreement to the effect that defendant would sell said horse and pay one hundred and twenty-five dollars to said Huggins and keep for himself as his property, the excess over said one hundred ·and twenty-five dollars that he may sell said horse for, or that he was to sell said horse and pay Huggins one hundred dollars and keep for himself any excess for which he might sell said horse; or that he was to sell or dispose of said horse to the best advantage and account to Huggins for the proceeds of such sale; and if you further believe from the evidence, beyond a reasonable doubt that after defendant received possession of said horse as such agent, if you so find, that he sold the same or pledged him for money, and that at the time of such sale or pledge the defendant had the fraudulent intent to appropriate the proceeds of said sale or pledge to his own use, and that in pursuance of said intent the defendant afterwards appropriated the proceeds of said sale or pledge to his own use and benefit, without the consent of said J. J. Huggins, then the defendant would be guilty of embezzlement of a horse, as charged, and you will so find and assess his punishment at confinement in the penitentiary for not less than two nor more than ten years.    But if you believe from the evidence, or have a reasonable doubt, that is was the intention of the defendant at the time he sold or pledged said horse, to act in good faith towards said J. J. Huggins, and ·carry out his alleged agreement, and that he after said sale or pledge conceived for the first time the intention to appropriate the proceeds of the sale or pledge then he would not be guilty of embezzlement of the horse and you will find him not guilty."    In this connection appellant requested the court to instruct the jury as follows, which was refused by the court: "You are instructed in this case that if you believe from the evidence

beyond a reasonable doubt that the defendant was, at the time alleged in the indictment in this case, in possession of the horse of J. J. Huggins by virtue of a contract of agency and was authorized by the said Huggins to sell the said horse; and if you find that the defendant did sell the said horse and misapply and convert to his own use and benefit the proceeds of the sale of the said horse, then that would not justify you in convicting the defendant for embezzlement in this case, unless you further find and believe from the evidence in this case beyond a reasonable doubt that at the time of the sale of the said horse, if you find that he did sell him, the defendant then intended to convert the proceeds of the said sale to his own use and benefit and deprive the said Huggins of the value of the said horse. And if you fail to believe beyond a reasonable doubt that he so intended to deprive the said Huggins of the value of the said horse, then you will find the defendant not guilty.

"And if you fail to find from the evidence in this case beyond a reasonable doubt that the defendant sold the said horse as his own property, if you find that he did sell him, then you will find the defendant not guilty, and so say by your verdict."

We think that the charge of the court is a fair presentation of the law applicable to the facts and that it was not error to refuse the special charge asked.

4. The questions of fact in the case have been passed on by the jury, nor do we believe that any reason has been suggested why their verdict should be set aside. Finding no error in the record of the court below, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 20, 1909.

RAMSEY, Judge.—The motion for rehearing filed in this case challenges the correctness of the opinion of the court affirming the judgment of conviction on the ground, substantially, that the charge of the court below, held by us to be good, was fatally defective in that, as a necessary fact on which to base a conviction, the jury should have been required to find, as a fact, that when appellant sold the horse in question, that he sold him as his own property. The charge of the court in the case of Epperson v. State, 22 Texas Crim. App., 694, contains such clause, and the jury, by the terms of the charge, was required to find in that case that Epperson had sold the organ alleged to have been embezzled as his own property, and not as agent for the owner. The charge in the case of Huggins v. State, 42 Texas Crim. Rep., 364, 60 S. W. Rep., 52, contains a similar clause and is substantially identical with the charge in the Epperson case. We have been cited to no authority, however, which holds that it is essential that the charge should so instruct the jury, nor can we conceive how or why it should be essential so to do. In

this case there was no suggestion either in the testimony of Kesterson, the person to whom the horse was sold, or the appellant himself that the animal in question was dealt with in any other respect than his own property. Kesterson testifies to an absolute sale of the property by appellant; appellant denies the sale, but in substance affirms that he had hypothecated the horse for sixty dollars and intended to redeem him. Therefore, under the facts of this case the issue, in any event, seems hardly to be raised; but we do not believe it important in any case. It seems to us that the vital question and the true criterion in every case is: did the party charged, at the time of the conversation, then have the specific intent to defraud the owner of the property? If he did, he would seem under the law to be guilty. If at the time, however, he sold the property, he did so in pursuance of his agency and in recognition of the right of ownership of the real owner, and he subsequently conceived the fraudulent intent to convert, misapply and embezzle the moneys derived from the sale of such property, he would be guilty of embezzlement of the money and not the property sold. In the celebrated case of Leonard v. State, 7 Texas Crim. App., 417, Judge Clark, in his usual clear and lucid manner, in discussing the general question of embezzlement, uses this language: "Addressing ourselves to the points presented, we are of opinion that notwithstanding the appellant may have had authority to make a sale of the cotton alleged to have been embezzled, yet if he sold the same with the formed intention to defraud the owner, and to convert it to his own use and benefit, he is as much guilty of embezzlement of the cotton as if he had no authority to make such sale. What is embezzlement? A fraudulent appropriation of the property of another, by a person to whom it has been intrusted. There is no settled mode by which this appropriation must take place, and it may occur in any one of the numberless methods which may suggest itself to the particular individual. The mode of embezzlement is simply matter of evidence, and not pleading; and the appellant in this case was charged in the usual form, that he 'did embezzle, fraudulently misapply, and convert to his own use' the particular property described. If he sold it with the honest purpose of delivering the proceeds to the owner, and after such sale conceived the fraudulent intention, he would not be guilty of embezzlement of the cotton at least. But if the sale was simply a means to effectuate his fraudulent purpose to convert the property to his own use—in other words, to steal it—it is as much an act of conversion as if. he had shipped it clandestinely to a foreign port, and there disposed of it. This distinction is not unsupported by authority, and we are referred to none of a contrary effect."

The rule there laid down is indeed the true test: Did appellant at the time of the sale have in his mind the specific intent and purpose to misappropriate and misapply the proceeds thereof? This

issue was expressly submitted to the jury in the court's charge, and they were instructed if such was not his purpose, or if they had a reasonable doubt thereof they should acquit. The argument is made, however, that if in making the sale appellant did so in recognition and in subordination of the owner's right in the property, that the purchase price would be and remain the money of the true owner. Undoubtedly so. And if there had been a repudiation of such ownership and a sale by the appellant, the proceeds would not of necessity be the property or money of appellant. At least the owner would have the right to ratify the sale and to recover the purchase price. The adoption of any other rule would make it rest in the power of the appellant, notwithstanding that at the very moment of the sale he had the fraudulent intent to misapply the funds, to make an election as to whether his crime should be that of embezzlement of the property delivered into his custody or the proceeds thereof. If this power existed, and the subsequent appropriation would be of the money and not of the property, it would place it within the power of a dishonest agent, by selling valuable property for less than fifty dollars, to bind the State to prosecute for an offense less than a felony. If a guilty purpose exists in the mind of the agent at the time of the sale to misapply and misappropriate the proceeds thereof, he is under all rules of law and justice, all rules of law and reason, guilty of the offense of embezzlement of the property. Nor can he change this rule of law by statement, suggestion or claim that he is selling the property in recognition of the owner's right and thereby change and alter the nature of his crime, if in fact he then has the guilty purpose to misapply and embezzle the proceeds thereof. The argument of counsel for appellant is put with much skill and force and may find some support in the language of the cases referred to, but it seems to us is illogical and fallacious.

It is claimed that the court erred in grouping facts and in instructing the jury that if the facts so stated were true the appellant would be guilty of the crime of embezzlement, and in not leaving the jury to determine whether, if the facts so found were true, appellant would be guilty of such an offense. The charge of the court in substance instructed the jury, if they found the agency as charged and possession of appellant under such agency and the subsequent sale by him with the guilty purpose of misapplying the proceeds, then if these facts were found to be true beyond a reasonable doubt, that he would be guilty of the crime of embezzlement. In this there was no error. It was left to the jury under an appropriate charge to find the facts. If these facts existed the law fixes the nature, the name and the punishment for the offense.

We have carefully considered the able argument of counsel for appellant, and upon the most mature reflection find there was no error in the proceedings of the court below.

It is therefore ordered that the motion for rehearing be and the same is hereby in all things overruled.

*Overruled.*