[No. 9480.  Department One.  October 19, 1911.]

THE STATE OF WASHINGTON, *Appellant*, v. JOSEPH M. SNOW,
*Respondent.*[1]

EMBEZZLEMENT—LARCENY—STATUTES—CONSTRUCTION. Under Rem.
& Bal. Code, § 2601, making it larceny for any person to withhold
or appropriate property in his possession, "as a public officer, or as
a person authorized by agreement or competent authority to hold
the same," a state officer who withholds or misappropriates money
of the state in his possession as such officer is guilty of larceny al-
though he had no authority or warrant in law to receive it; the
clause as to "competent authority" not applying to "public officers,"
and the law having regard to the officer's relation to the money,
and not to the legality of its acquirement.

Appeal from a judgment of the superior court for Thur-
ston county, Mitchell, J., entered January 19, 1911, upon
sustaining a demurrer to the information, dismissing a pros-
ecution for grand larceny.  Reversed.

*The Attorney General, George A. Lee, Assistant,* and
*John M. Wilson,* for appellant.

*Thomas M. Vance* and *C. E. Collier,* for respondent.

GOSE, J.—This is an appeal by the state from a judgment
sustaining a demurrer to an information.  The charging
part of the information is as follows:

"That on or about the 31st day of July, 1909, at Olympia,
in the county of Thurston and state of Washington, one
Joseph M. Snow did commit the crime of grand larceny as
follows, to wit:  He, the said Joseph M. Snow, then and
there being an officer of the state of Washington, to wit: the
duly appointed, qualified and acting state highway commis-
sioner of said state, and then and there having in his pos-
session, custody and control, as such officer, the sum of two
thousand, one hundred and forty-two and 05-100 ($2,142.05)
in lawful money of the United States of the value of two
thousand one hundred forty-two and 05-100 ($2,142.05)

[1]Reported in 118 Pac. 209.

12—65 WASH.

dollars, being the property and funds of said state of Washington, did then and there unlawfully, fraudulently and feloniously, and with intent to deprive and defraud the state of Washington thereof, withhold, steal, and appropriate to his own use the said sum of two thousand, one hundred and forty-two and 05-100 ($2,142.05) dollars."

The code, Rem. & Bal. Code, § 2601, provides that:

"Every person who, with intent to deprive or defraud the owner thereof— . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation, or, as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto;"

steals such property and is guilty of larceny. The grade of the offense is defined by § 2605. The grounds of demurrer are, (1) that the information does not charge a crime or offense; and (2) that the court is without jurisdiction. The judgment was that the "general demurrer" be and is sustained, and that the case be dismissed. The only question presented by the appeal is the legal sufficiency of the information.

The position of the state is that the respondent is fraudulently holding funds of the state as a public officer, and that the information charges a crime under the terms of the statute quoted, regardless of the fact that there is no law authorizing him to "receive" the money. On the other hand, the respondent contends that, there being no law authorizing him to receive the money, he is not within the denunciation of the statute. A careful reading of the statute discloses that it is two-fold in its nature, as applied to the fraudulent withholding or appropriation of public property by a public officer. The first provision is directed only against the unlawful withholding or appropriation. The second is directed

against such unlawful withholding or appropriation by a person "authorized, by agreement or by competent authority, to take or hold" the possession, custody, or control. The respondent is charged only with an infraction of the first provision of the statute. The information does not charge that he was authorized by "competent authority to take or hold" the property. The charge is that, having the money of the state in his possession, custody, and control as a state highway commissioner, he unlawfully, fraudulently, and feloniously appropriated it to his own use. It seems clear that the legislature contemplated that a public officer might have property of the state in his possession and custody without warrant of law, and that it intended to make it criminal for such an officer to fraudulently withhold or appropriate it to his own use.

But putting this view to one side, we think the information charges a crime. The charge is that the respondent fraudulently withheld public money as a public officer. This the statute condemns as a criminal offense. Respondent cannot obtain and hold the property of the state in virtue of his office and excuse himself from criminal responsibility by admitting the actual withholding and by asserting that he received it without statutory authority, and hence that he does not hold it as a public officer. This view is, we think, in accord with the better authority. In *State v. Spaulding*, 24 Kan. 1, the indictment charged the defendant as city clerk with embezzling city money. By far the larger portion of the money was received by him as license fees. There was no statute or ordinance authorizing him to receive such money. It was contended on his behalf that the money did not belong to the city, but to the licensees, from whom he received it without lawful authority. In meeting this contention, the court, speaking through Judge Brewer, said:

"On the other hand, the state rests upon the broad proposition that when a party assumes to act for another, he is concluded by that assumption, no matter who else is bound:

that, if A. assumes to act as the agent of B., and receives money belonging to B., he cannot thereafter deny that it is B's money, and that, notwithstanding B. is not concluded by his acts, and though in fact he was not the agent of B.; that this doctrine, universally recognized in civil, is equally true in criminal law. A man may not say: 'I have the right to receive money,' and receive it, and then, when challenged for its receipt or embezzlement, avoid liability by saying, 'I had no right to receive it.' He has voluntarily assumed a position, the responsibilities of which he may not avoid. The defendant may not say that he holds this money simply for the licensees, because he himself has issued the licenses, which he might rightfully issue only when the city had received the money; that by issuing, he conclusively, so far as he was concerned, affirmed that the money he had received and was holding was city money. The law of estoppel binds him, whether it binds any one else or not, and is equally potent in a criminal as well as a civil action. . . . But we hold that when one assumes to act as agent for another, he may not, when challenged for those acts, deny his agency; that he is estopped not merely as against his assumed principal, but also as against the state; that one who is agent enough to receive money, is agent enough to be punished for embezzling it. An agency *de facto*, an actual even though not legal employment, is sufficient."

In *Skagit County v. American Bonding Co.*, 59 Wash. 1, 109 Pac. 197, a like contention was made on behalf of the appellant, a surety for a defaulting county auditor, and rejected by this court. While not stated in direct terms, the gist of the decision is that a public officer, who receives public funds without statutory authority but in virtue of his office, is estopped to dispute his right to receive it. In *Ex parte Ricord*, 11 Nev. 287, it is held that it does not lie in the mouth of one who holds the money of another to deny that he had the authority which he claimed in order to collect it, and which the confidence reposed in him by his employer enabled him to claim with success. In *People v. Hawkins*, 106 Mich. 479, 64 N. W. 736, the court addressing itself to the inquiry as to the criminal responsibility of one who receives property for another assuming to act as its agent, said:

"By virtue of his relation, he became possessed of property which was not his, and which belonged to the company if to anybody. He acted for, and permitted himself to be held out as the agent of, the company, and received money from various persons who were willing to pay. He was a *de facto* servant, and it is unnecessary that his relation should have grown out of a lawful contract of agency. It was enough if he acted, and was permitted to act, as such."

The same rule was announced in *People v. Sanders*, 139 Mich. 442, 102 N. W. 959, where the defendant as a deputy township treasurer came into the possession of money belonging to the township. The contention that there was no crime because the money was received without lawful authority was rejected as unsound. What we conceive to be the correct rule is aptly stated in *State v. Pohlmeyer*, 59 Ohio St. 491, 52 N. E. 1027, in the following language:

"The statutory definition of the offense regards the actual relation of the agent, servant or employee, and not the legality of the mode in which it was created nor the extent of the authority conferred. And the rule that one who receives money or any other thing of value in the assumed exercise of authority as agent for another, is estopped thereafter to deny such authority, applies in criminal prosecutions as well as in civil actions."

This view has the support of Mr. Bishop, vol. 2 Bishop's New Crim. Law, § 364. The same principle is announced in *State v. Tumey*, 81 Ind. 559; *People v. Royce* (Cal.), 37 Pac. 630; *State v. O'Brien*, 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252; *Ex parte Hedley*, 31 Cal. 109; *People v. Gallagher*, 100 Cal. 466, 35 Pac. 80:

The respondent relies upon the following authorities: *San Luis Obispo County v. Farnum*, 108 Cal. 567, 41 Pac. 447; *People v. Pennock*, 60 N. Y. 421; *Orton v. Lincoln*, 156 Ill. 499, 41 N. E. 159; *Warswick v. State*, 36 Tex. Cr. App. 63, 35 S. W. 386; *State v. Johnson*, 49 Iowa 141; *People, to Use of Howard, v. Cobb*, 10 Colo. App. 478, 51 Pac. 523; *People ex rel. Lane v. Hilton*, 36 Fed. 172; *State*

*v. Moeller,* 48 Mo. 331; *Moore v. State,* 53 Neb. 831, 74 N. W. 319.

In the *Farnum, Pennock, Orton, Cobb, Hilton,* and *Moeller* cases, it was held that the sureties were not liable upon an official bond where the money did not come into the hands of the principal as a public officer in pursuance of law. The bond in each of these cases was substantially the same as the bond in the Skagit county case. In that case this court said that the breaches of duty relied upon for a recovery on the bond were for the unauthorized acts of the officer; acts that were not a part of his official duties, but illegally performed "for his personal and private benefit." It is further said that one of the undertakings of the sureties was that their principal would give faithful, honest, and efficient service, and that, he having misappropriated and embezzled public moneys, the sureties became liable therefor. In the *Warswick* case, under a statute making it a criminal offense for an officer of any county, city, or town to fraudulently take, misapply, or convert to his own use any money or property belonging to such county, city or town "that may come into his custody or possession by virtue of his office or employment," it was held that an information charging the defendant with the receipt of a certificate of deposit as county judge and with having fraudulently converted it, did not state a crime, there being no statute authorizing him to take the custody or possession of such property. A like view was taken in the *Johnson* and *Moore* cases under similar statutes. The decision in the latter case was, however, by a divided bench. Judge Sullivan in dissenting announced a view in harmony with that expressed by Judge Brewer in *State v. Spaulding, supra.*

It will be noticed that in these cases the offense consisted in the conversion by a public officer of property "that may come into his custody or possession by virtue of his office or employment." The portion of the statute charged to have been violated in the case at bar contains no such provision.

We fully endorse the statement of Judge Brewer in the *Spaulding* case, that the law of estoppel binds the respondent whether it binds any one else or not, and that it is applicable alike to civil and criminal cases.   The rule announced in the *Pohlmeyer* case, that the statute defining the offense regards the actual relation of the party to the money and not to the legality of the mode of its acquirement, impresses us as being both wholesome and sound.

We think this information charges a crime, and the judgment is therefore reversed.

DUNBAR, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.