[No. 16965.  Department Two.  April 11, 1922.]

## THE STATE OF WASHINGTON, *Respondent,* v. HARRY DUDMAN, *Appellant.*[1]

EMBEZZLEMENT (14)—EVIDENCE—ADMISSIBILITY. In a prosecution for the embezzlement of a certificate for one thousand shares of stock, intrusted by A. to the defendant as agent for sale, in which defendant admitted the sale of one thousand shares to W. claiming it was not A.'s stock but part of his own, entries in the corporate stock books are admissible showing the cancellation of A.'s certificate at the time in question, and the reissue, in lieu thereof, of a certificate to W. for one thousand shares; in view of Rem. Comp. Stat., §§ 3693, 3827 requiring a corporate record of all certificates showing date, number and to whom issued and transferred, and Id., § 3829, making it a misdemeanor to make any false entry in such record.

SAME (3)—ELEMENTS OF OFFENSE—BY AGENTS. Where an agent was intrusted with a certificate of stock for sale in July, and on the following January sold it and refused to account for the proceeds, he is guilty of larceny, under subdiv. 3, of Rem. Code, § 2601, making it larceny for an agent or bailee, intrusted with the possession of property, to appropriate the same to his own use.

CRIMINAL LAW (347)—NEW TRIAL—PREJUDICE OF JUROR. It is not an abuse of discretion to refuse a new trial on account of the prejudice of one juror, where the motion was supported by hearsay affidavit for appellant's attorney and denied by the hearsay affidavit of the prosecuting attorney.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered August 9, 1921, upon a trial and conviction of grand larceny. Affirmed.

*G. E. Lovell* and *E. A. Davis,* for appellant.

*W. O. Miller,* for respondent.

HOLCOMB, J.—Appellant was accused and convicted of the crime of grand larceny. The information alleged that he held 1,000 shares of the capital stock of the Bethlehem Gold Mines, Limited, a corporation, in his

[1]Reported in 205 Pac. 848.

possession, custody and control, as agent of one W. S. Egbers, and being then and there authorized by Egbers, the owner thereof, to sell the 1,000 shares, and to account to Egbers for the proceeds thereof, sold the same for the sum of $500, or thereabouts, and did then and there wilfully and feloniously, and with intent to defraud Egbers of the proceeds of the sale of the stock, withhold and appropriate the proceeds of the sale thereof to his own use.

The statute under which the prosecution is brought is as follows:

"Every person who, with intent to deprive or defraud the owner thereof—   . . .

"(3)   Having any property in his possession, custody or control, as . . . agent, . . . of any person, . . . shall secrete, withhold or appropriate the same to his own use . . .

"Steals such property and shall be guilty of larceny." Rem. Code, § 2601 (P. C. § 8944).

Appellant complains of the refusal of the court to dismiss the defendant at the end of plaintiff's case, and refusal to dismiss him at the conclusion of the case, and refusal to grant a new trial.

Appellant contends that there is absolutely no evidence that he committed the acts complained of in the information, and that the acts proven by the prosecution do not constitute a crime.

In July, 1919, Egbers left with appellant one certificate of stock, originally issued to one John Armstrong, for 1,000 shares of the capital stock of the Bethlehem Gold Mines, Limited, which had been purchased by Egbers and indorsed in blank by Armstrong. The agreement was that appellant was to sell this stock and account to Egbers for the proceeds of such sale. In January, 1920, appellant sold to Jake Wacker one thousand shares of the capital stock of the Bethlehem

Gold Mines, Limited, receiving therefor the sum of
$500. The proceeds thereof were immediately depos-
ited in the Pioneer National Bank of Ritzville, Wash-
ington, and immediately withdrawn upon checks issued
by appellant. The date of the sale of the stock to
Wacker was January 2, 1920, and on January 6, 1920,
a certificate for 1,000 shares of the capital stock of
the company was issued by appellant, as president, and
G. T. Van Dusen, as secretary of the company, and by
appellant sent by mail to Wacker. On May 27, 1919,
a certificate numbered 627 had been issued to John
Armstrong of Ritzville, Washington, as shown by the
register of stock kept by Van Dusen as secretary of
the corporation. The same register shows that, on
January 6, 1920, a certificate numbered 953 was issued
in lieu of the certificate numbered 627 previously held
by John Armstrong for 1,000 shares. The register
also shows that, on January 6, 1920, certificate No. 953
was issued for 1,000 shares of the capital stock of the
company to Jake Wacker, Jr., of Odessa. Another
page of the register contains a list of the stockholders
of the company, and shows 1,000 shares of stock in
the name of John Armstrong. In another column, un-
der the heading ''To Whom Transferred,'' appears
the name of ''Jake Wacker, Jr., address Odessa,'' and
under the heading ''Date of Transfer,'' appears the
date ''1/6/20.'' Under the heading ''Shares trans-
ferred'' the number ''1,000'' appears, and under the
heading ''Number of new certificate,'' ''No. 953.''
These stock entries show apparently a complete record
of the stock originally issued to Armstrong, except
that they do not show the transfer by Armstrong to
Egbers.

Appellant contends that the entries from the stock
book are not competent evidence against him, and tes-

tified that he knew nothing of the entries being made therein at the time they were made, and not until long afterwards. The testimony on behalf of appellant was to the effect that he was the selling agent of the company; that he had in his own name some 300,000 shares of the company's stock, and in addition thereto there was a credit due him on the books of the company amounting to some $40,000, which he had advanced to and for the company. Appellant would write to Van Dusen, the secretary, and tell him to issue a stock certificate to a certain person; in this case to Wacker. At the end of the month appellant would send in some of his certificates, Van Dusen would cancel these certificates and cover the certificates already issued by certificates of like amounts among those sent in by appellant. Thus, it is contended, if appellant made sales of various amounts, among them a 1,000-share sale, at the end of the month he would send in certificates of various amounts, among them a 1,000-share certificate, and under the heading "To Whom Transferred", Van Dusen would put in any 1,000-share certificate he desired, irrespective of whether it stood in the name of one man or that of another. If appellant sent in no certificates, Van Dusen would issue treasury stock and charge the same up to appellant on his open account. Van Dusen testified that he never notified appellant that the Wacker stock was covered by the Armstrong stock, and that appellant never saw the books and knew nothing of Van Dusen's method of keeping the books. On the contrary, appellant testified that he knew in a general way how Van Dusen kept the books, and approved of it.

The entries on the stock register, however, are inconsistent with appellant's and Van Dusen's explanation. Appellant sold 1,000 shares to Wacker on Janu-

ary 2, completed the financial transaction at a bank in Odessa, Washington, on January 4th or 5th, received the money therefor, and had it transferred to the Pioneer National Bank of Ritzville on the same day, and on the next day, not at the end of the month, the entry was made in the stock register in the general office of the company at Spokane, by Van Dusen, the secretary, that 1,000 shares of stock standing in the name of Armstrong had been transferred to the name of Jake Wacker, Jr. The certificate number of the Armstrong stock was cancelled, and a certificate with a new number issued to Wacker. This would certainly indicate that Armstrong's stock was intrusted to appellant by Egbers after he acquired it, and was sold by appellant to Wacker and returned by appellant to the office of the company, cancelled, and a new stock certificate issued in the name of Wacker.

Appellant contends that Van Dusen's method of showing the stock transfers was nothing but a matter of bookkeeping followed of his own accord; but this cannot be sustained. The statutes governing private corporations in this state provide: first, that the stock of the company shall be deemed personal estate, and shall be transferable in such manner as shall be prescribed by the by-laws of the company; but no stock transfer shall be valid, except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties by and to whom transferred, the numbers and designation of the shares, and the date of the transfer (Rem. Code, § 3693 [P. C. § 4520]); second, that it shall be the duty of the trustees of every company incorporated to keep a book containing the names of all persons, alphabetically arranged, who are or shall be stockholders of the corporation, and show the number of shares of stock held by them respectively,

and the time when they became the owners of such shares, etc. (Rem. Code, § 3701 [P. C. § 4527]); and third, if at any time the clerk or other officer having charge of such book shall make any false entries or neglect to make any proper entry therein, etc., he shall be deemed guilty of a misdemeanor, etc. (Rem. Code, § 3703 [P. C. § 4513]). [Rem. Comp. Stat., §§ 3693-3827, 3829.]

Notwithstanding Van Dusen's attempted falsification of the record in his testimony, it must be assumed that he was attempting to comply with the law regarding the record of stock issued and transferred, and also that appellant, having full charge of the corporation as president, and of its promotion, knew the law, made at least some effort to comply with it, so that he and all others would know who were stockholders, when they became such, who had ceased to be stockholders, and when and how. The records, therefore, under the statute, were competent evidence, and the jury were justified in disbelieving appellant and Van Dusen, and believing the record.

It is argued that appellant is not bound to keep the identical shares of stock on hand, but could replace the shares intrusted to him by Egbers with other treasury stock, and that he had plenty of such stock with which to replace the stock received from Egbers, and had offered to replace the same with 1,000 shares of treasury stock. Thompson on Corporations, vol. 4, § 4235, is cited to the effect that a *pledgee* generally is not bound to keep the identical shares on hand. Under the evidence and information in this case, appellant was not a pledgee, but was an agent or bailee, and as such the statute under which the prosecution was instituted applies.

"One who sells property as an agent, and who subsequently conceives an intent to and does misappro-

priate the proceeds, embezzles the proceeds, and not the property." (*Henderson v. State*, 55 Tex. Cr. 640, 117 S. W. 825.)

A somewhat similar case in our own court is that of *State v. Campbell*, 99 Wash. 502, 164 Pac. 968, where the defendant was given a note and mortgage for collection. He sold the note and mortgage and failed to account for the proceeds. He claimed he purchased the note and mortgage from the holder thereof, and that the relation of debtor and creditor, instead of principal and agent, existed between them. The jury found that the relation of principal and agent existed between the parties, and the defendant was convicted, and appealed. In reviewing that case we said:

"The evil at which the statute defining larceny by embezzlement is leveled is not confined to instances where the agency involved is of long duration or is broad and comprehensive in scope. If, at the time of the felonious and fraudulent conversion, the accused was an agent for a particular purpose only, and the property appropriated was intrusted to him by virtue of such agency, it is sufficient. It is not the nature and extent of the authority conferred, but the fact of the relationship which constitutes an essential element of the crime. If the note and mortgage were delivered to appellant for collection, there can be no question but that he was an agent within the meaning of the statute."

So in this case, if the Armstrong certificate for 1,000 shares of stock was intrusted to appellant for sale, he to account for its proceeds to the then owner thereof, as found to be the fact by the jury, then appellant was guilty if he failed or refused to so account for the proceeds after the sale.

It is also claimed that a new trial should have been granted to appellant by reason of bias and prejudice of one juror. The hearsay affidavit of the attorney for

appellant as to the bias and prejudice of the juror is denied by the hearsay affidavit of the prosecuting attorney, and the court was satisfied that there had been no bias and prejudice on the part of the juror and denied the motion for a new trial.

We certainly cannot say that he thereby abused his discretion. The case was submitted to the jury upon fair, concise and lucid instructions, and no exception was taken to such instructions.

We can find no error in the record, and the judgment is affirmed.

PARKER, C. J., MAIN, HOVEY, and MACKINTOSH, JJ., concur.