[No. 18205. Department One. March 21, 1924.]

## The State of Washington, *Respondent*, v. A. C. Sullivan, *Appellant*.[1]

Embezzlement (18)—Evidence—Sufficiency. The evidence warrants a conviction of embezzlement by the secretary of a city police department, where it appears that he received a check from the United States government payable to the city for the payment of care of seamen, which had no relation to the police department, and took it to the city treasurer, who cashed the check and gave him the money, which he retained for a period of a year and eight months after ample time to discover whether the funds rightfully belonged to him on account of certain dealings that he had had with the government, and notwithstanding his claim of a mistake and final return of the money.

Same (4)—Larceny—By Agent or Employee—Statutes. A public officer, receiving money belonging to the city and converting it to his own use, may be guilty of embezzlement, although he had no right to receive it, under Rem. Comp. Stat., § 2569, relating to misappropriation by a public officer, or Id., § 2601, subd. 3, relating to larceny by embezzlement by "an agent . . . or as a public officer."

Same (20)—Elements of Offense—Instructions. In a prosecution for embezzlement by a city official, it is not error to refuse requested instructions covering the subject of his intent in retaining possession of the money, where the court covered all the requests, in brief, by defining the elements of the crime, and instructed that, before defendant could be found guilty, the jury must find that it was his purpose and intention in retaining the money to permanently deprive the city thereof.

Same (4)—Demand—Necessity. An officer converting money which he had no right to receive may be prosecuted for embezzlement, without any precedent demand for the return.

Same (15)—Evidence—Intent—Instructions. A public officer misappropriating the proceeds of a check which came into his pos-

'Reported in 224 Pac. 586.

session some time previously, is guilty of embezzlement though he formed the unlawful intent at the time he received the check.

SAME (12)—OFFICERS OR EMPLOYEES—INFORMATION—SUFFICIENCY. A public officer of a city, misappropriating the funds of the city, is the agent and trustee of the city, within the law defining embezzlement.

WITNESSES (122, 126-1) — CROSS-EXAMINATION — IMPEACHMENT — INCONSISTENT STATEMENTS—COLLATERAL MATTERS. In a prosecution for embezzlement of money by a public officer which defendant claimed was in his. safe and had not been used or converted, his statement to a witness that the H. Company had furnished him the money with which he had squared the account is not upon a collateral matter, and his denial thereof is a proper subject for impeachment, where defendant denied the conversation after his attention was directed to the identical occasion and conversation.

EMBEZZLEMENT (15)—INTENT—EVIDENCE—ADMISSIBILITY. Where an officer, charged with embezzlement of money, claimed that he had made a mistake in his account through other dealings with the government, vouchers and checks are admissible to show the time of his other dealings, and that he had records from which he could have checked his various accounts, as they had a tendency to disprove his defense.

Appeal from a judgment of the superior court for King county, Ralston, J., entered April 10, 1923, upon a trial and conviction of grand larceny. Affirmed.

*John F. Dore,* for appellant.

*Malcolm Douglas, Bert C. Ross,* and *Chester A. Batchelor,* for respondent.

HOLCOMB, J.—The charge of the information on which appellant was convicted in the court below was that he

"in the county of King, state of Washington, on the 5th day of April, A. D. 1920, being then and there a servant, agent, employee and trustee of the city of Seattle, a municipal corporation of the state of Washington, then and there did have entrusted to him, and have in his possession, custody and control, as and by virtue of being such servant, agent, employee and trustee, five hundred ninety five dollars ($595.00), in

money, of the value of five hundred ninety-five dollars ($595.00) in lawful money of the United States, the property of the said city of Seattle, a municipal corporation, and he, the said A. C. Sullivan, then and there willfully unlawfully and fraudulently and feloniously did secret, withhold and appropriate the same to his own use with intent to deprive and defraud the said city of Seattle, a municipal corporation, thereof.''

The assignments of error urged by appellant are that, (1) the court erred in denying his motion for a new trial; (2) erred in the admission of testimony; and (3) erred in refusing to give the instructions requested by appellant.

The first contention relied upon by appellant is that the evidence did not sustain a conviction for embezzlement. It is asserted that appellant took the check for the money alleged to have been converted to his principal, his principal cashed the check and gave appellant the money; that the money was wrongfully and illegally given to him by his principal; that it was not given to him for any specific purpose, and that the delivery to him was contrary to law; that when appellant through accident came into possession of the check, it was not cashed for a period of nine months after its issuance, and that the proper thing to do with the check was to deliver it to the city treasurer; that the endorsement on the check "A. C. Sullivan, Secretary,'' was unnecessary, and was an invalid endorsement; that, when Sullivan took the check to the city treasurer, it was the duty of the city treasurer to retain the same.

These assertions rest partially upon assumptions which are not justified. Sullivan was secretary to the police department of the city of Seattle. The city treasurer was not his principal. It is true the city treasurer had no right to cash the check and give ap-

pellant the money; and it is also true that appellant had no authority to receive the money from the treasurer. But appellant was the agent, servant, employee and trustee of the city, and it made no difference whether he was such in relation to this particular fund or not. He got the check into his hands in some way, which was a check from the United States government for the payment of care of seamen, P. H. S. (Public Health Service), as shown on its face. It had no relation to the police department of Seattle, and anyone receiving it into his possession in whatsoever manner would instantly know that fact from the face of the check. But however he received the check, he received the proceeds thereof as a servant, agent, employee or trustee of the city. The city was his principal, and not the city treasurer. The information alleges, and the proofs tended to sustain the allegation, that, having received the money on the check, "he then and there willfully, unlawfully, fraudulently and feloniously did secrete, withhold and appropriate the same to his own use with intent to deprive and defraud the city."

The evidence shows that, on June 4, 1919, the check was drawn by the United States Treasurer, payable to the city of Seattle, in the sum of $595. It bore on its face plainly printed and typewritten letters: "Object for which drawn: Care of Seamen, &c., P. H. S."

The department of public health and police department were located in the same building. Appellant, from 1906 to June, 1922, was secretary of police. The check came into his possession presumably through a mistake in delivery by the mail carrier. On April 5, 1920, nine months after issuance, appellant took the check to the city treasurer's office, and secured from a deputy in the office the proceeds of the check. The treasurer deposited the check in a bank, and in due course of time it was honored and paid by the United

States Treasurer. When received back the check bore the endorsement of the city treasurer, and the endorsement of Sullivan, as follows: "City of Seattle, A. C. Sullivan, Secretary." In December, 1921, one year and eight months later, the state public examiners, checking over the accounts of the public health department of Seattle, found the bill for which the above check was given. Upon making inquiry as to why it had not been collected, a letter was received from Washington to the effect that the bill had been paid by the above check, which bore the above endorsements. This letter was received early in February, 1922. Upon its receipt, the chief clerk and secretary of the City health department took the letter to appellant and asked him to credit the city health department with the amount of the check. Appellant said he would look it up. From time to time thereafter until June, 1922, the health department called the matter to the attention of appellant, who did nothing towards straightening the matter up, or making an explanation thereof. On June 17, 1922, at a meeting in the office of the chief of police, the *Assistant Attorney General* of the state showed the check to appellant and asked him what he knew about it. Appellant replied that he had cashed the check, and that he must have gotten his accounts mixed up, and must have thought this money was coming to him from the government. He verbally offered to pay the money, but the *Assistant Attorney General* told him that "if he thought he was in the clear and could go over his record and find that this money was due and owing to him, he would be given a chance to do that before anything further was done." A week's time was thereupon agreed upon. On June 20, three days later, appellant paid into the city treasury the sum of $595.

In his own behalf appellant testified, admitting the

cashing of the check, but denying any intent to deprive or defraud the city. He testified that he cashed the check by mistake, thinking it was money owing to him from the government on account of his dealing with the government in the purchase of army stores for which he acted as an accommodation agent for city employees, by permission of the city. He denied any conversion of the money, and claimed that all of the moneys received by him were put in a city safe in his office, and that, when he repaid the money, he merely took it from a compartment in that safe. He testified also that, during the period of about one year, he bought from the government army groceries and supplies for city employees. He had had numerous adjustments to make, and at times had received rebates for goods; that he had no books of account showing any receipts or disbursements, and kept no books. After he left the office of secretary of police, a few days subsequent to his payment of the $595 to the city treasurer, there was found in the safe in the office of the secretary of police the sum of $1,493.75, which aggregated the receipts of appellant for gun permits issued by the police department covering a period of several years. Appellant testified that this had not been paid to the city treasurer because of a dispute as to its disposition.

In rebuttal the state called a Mr. Goran, an attorney, who testified that, in September, 1922, appellant told him that the Dehydrated Fruit Company had furnished the money with which appellant had squared his accounts at the police station.

Appellant admitted receiving the check. His retention and concealment of it for a period of nine months warrant the inference that his opportunities during that time must have been ample to have discovered and made certain whether or not this money

was due him from the government upon any matter concerning his dealings in army goods stores before presentation of the check. His retention of the funds after cashing the check, for a period of a year and eight months, also was apparently ample time for him to have discovered whether the funds rightfully belonged to him or not. These were circumstances sufficient to warrant the jury in finding that he wrongfully and illegally received the money and converted it to his own use with intent to deprive and defraud the owner thereof, the city of Seattle.

The information was framed so that either of two statutes could be relied upon. Section 2569, Rem. Comp. Stat. [P. C. § 8811], relating to misappropriation by a public officer, and § 2601, subd. 3 [P. C. § 8889], defining the crime of larceny by embezzlement.

The first statute provides that,

"Every public officer, and every other person receiving money on behalf or for or on account of the people of the state . . . or of any city . . .

"1. Shall appropriate to his own use or to the use of any person not entitled thereto, without authority of law, any money so received by him as such officer or otherwise; . . . shall be punished, etc. . . ."

The larceny by embezzlement statute is:

"Every person who, with intent to deprive or defraud the owner thereof—

"3. Having any property in his possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, . . . or as a public officer, . . . shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; . . . shall be guilty of larceny."

The contention that, because he had no right to receive the money, he committed no crime in converting it to his own use, cannot be sustained. Appellant en-

dorsed the check as secretary of police. In that capacity he was an employee and agent of the city. The case is therefore controlled by our decisions in *State v. Raby,* 31 Wash. 111, 71 Pac. 771, and *State v. Snow,* 65 Wash. 353, 118 Pac. 209, 37 L. R. A. (N. S.) 305.

Appellant insists that the court erred in refusing to give the following requested instructions:

"(1) I instruct you that if you should find from the evidence that the defendant was careless or reckless or negligent in handling the money in question, but that he did not retain it for the purpose of cheating and defrauding the city of Seattle of it, then your verdict must be not guilty.

"(2) I instruct you that if the defendant appropriated the money in question to his own use with intent to return it to the city of Seattle whenever demand was made upon him so to do, then the retention of said money would not, in itself, be sufficient upon which to base a verdict of guilty, and it would be your duty to find the defendant not guilty.

"(3) I instruct you that where one retains money belonging to another and intends to make payment of the same whenever demand is made, then said person is not guilty under an information such as this, and if you should find those to be the facts in this case, it will be your duty to find the defendant not guilty.

"(4) I instruct you that if you should find that the defendant, through carelessness or negligence, paid another account of the city of Seattle with part of this money, then that in itself would be no evidence that he intended to cheat or deprive the city of the use of its money, although the money was applied for a wrongful purpose.

"(5) I instruct you that the mere fact that one conceals the possession of money belonging to another does not, in itself, make one guilty of the crime charged in this information.

"(6) I instruct you that the mere detention of

money by an agent does not, in itself, warrant the inference of fraudulent intent to misapply it.

"(7) I instruct you that an unexplained failure to pay over money does not raise a presumption of intent of felonious appropriation sufficient to convict.

"(8) I instruct you that the defendant in this case may have had no right to retain possession of the money for the length of time that he did retain possession, but this would not be sufficient to convict him unless you are satisfied from the evidence beyond a reasonable doubt that he retained it for the purpose of cheating and defrauding the city of Seattle of the money.

"(9) I instruct you that the bare fact that the defendant retained the money in his possession for a considerable length of time would not, in itself, be sufficient to convict, and that it is incumbent upon the state to go further and to prove that the purpose of retaining it was for the purpose of depriving and defrauding the city of Seattle of its use.

"(10) I instruct you that if you should find that the defendant did misappropriate the money, and did it with the intent to deprive and defraud the city of Seattle thereof, but that he formed said intent at the time that said check came into his possession, then it would be your duty to find the defendant not guilty.

"(11) I instruct you that if you should find from the evidence in this case that the defendant is a public officer, that his duties are defined by law, and that he has taken an oath of office that he held for a definite tenure, then he would not be a servant or employee of the city of Seattle, and could not be convicted under this information."

Appellant contends that these instructions were all justified by our decision in *State v. Ward*, 96 Wash. 550, 165 Pac. 794.

The trial court gave an instruction (No. III) defining the elements of the crime necessary to be proven beyond a reasonable doubt by the prosecution as alleged in the information, and by another instruction

(No. V.) charged the jury that "before the defendant can be found guilty you must find on his part that it was his purpose and intention, in retaining the money, to permanently deprive the city of Seattle thereof, and to cheat the city of Seattle of said money." These instructions gave in brief all the necessary elements for the jury to find before conviction.

As to requested instruction No. 2, it was incorrect in law, for the reason that, if appellant never had a right to the money, no demand was necessary to be made upon him. *State v. Leonard,* 56 Wash. 83, 105 Pac. 163, 21 Ann. Cas. 69. It never was the law that demand was necessary upon an embezzlement before a prosecution could be instituted, or before an embezzler could be rendered liable for his misappropriation. If the money did not belong to appellant, but belonged to the city, it was his duty to pay it to the city as soon as he received it. Whether the retention and concealment of the money for a long period of time warranted the inference of fraudulent intent was a question of fact for the jury under all the circumstances shown in the case. A jury may certainly infer a fraudulent intent from the retention for a long period of time, without a satisfactory explanation, of money to which one admittedly has no right. The case cited and relied upon by appellant does not sustain him. It merely holds that, in a proper case, the jury should be instructed that the intent to deprive and defraud the owner of the property appropriated is an essential element of the crime of grand larceny, and that where one converts money or property under a *bona fide* claim of title thereto, he is not guilty of larceny. In the present case there was no evidence on the part of appellant of a *bona fide* claim of title to the property. His claim is that he never took the money, or that if he did it was by mistake and without a fraudulent intent. It was immaterial when

appellant formed the intent to defraud the city, if he had such intent at the time he received and converted the money, or at any time thereafter and before returning it to the city. *State v. Dudman,* 119 Wash. 522, 205 Pac. 848.

As to requested instruction No. 10, no argument in support of either it or request No. 11 was made by appellant. Number 10 is certainly not the law. Requested instruction No. 11 was obviously improper. Even though appellant was a public officer, as secretary of police he was still also an agent and trustee. *State v. Isensee,* 12 Wash. 254, 40 Pac. 985.

On cross-examination appellant testified in answer to interrogatories, as follows:

"During 1922 I was connected with the Dehydrated Fruit Company. I received no money from the Dehydrated Fruit Company during May and June, 1922. The Sullivan Company did some business for the Dehydrated Fruit Company."

He was then asked:

"Q. Captain Sullivan, I will ask you if during the month of September, 1922, you did not have a conversation with Henry Goran? A. I presume so. Q. A lawyer here in this city? A. Yes, sir. Q. Relative to your trouble in the police department, and in which you told Henry Goran that the Dehydrated Fruit Company had furnished the money with which you cleared your account at the police station? A. No, sir. Q. You did not have that conversation? A. No, sir. Q. Or any conversation of that import?"

Counsel for appellant then objected as follows:

"I object to that as incompetent, irrelevant and immaterial. He said he did not have that conversation. If there is any other impeaching question the state wants to ask they may do so.

"Q. You know Henry Goran? A. Yes, sir. Q. A lawyer here in the city, and you know him, I mean? A. Yes, sir."

In rebuttal the state called Henry Goran, who testified:

"Q. State your name to the jury, please? A. Henry J. Goran. Q. Where do you live? A. In Seattle. Q. What is your business or profession? A. Attorney. Q. Do you know the defendant, A. C. Sullivan? A. Yes, sir. Q. I will ask you if in September, 1922, you had a conversation with the defendant in which he stated to you that the Dehydrated Fruit Company had furnished the money with which he cleared up his accounts at the police station?"

Counsel for appellant objected to the question, as follows: "On the ground that no foundation has been laid for the impeaching question;" which objection was overruled by the court. The witness then answered: "A. Yes, sir."

Appellant contends that the admission of this testimony was erroneous for two reasons: (1) that proper grounds had not been laid for impeachment; and (2) it was an attempt to impeach on a collateral matter. It is urged that it is fundamental that where a defendant denies making a statement, before he can be impeached the time, place and circumstances must be called to his attention, citing *State v. Gleason,* 116 Wash. 548, 199 Pac. 739; *Brown v. Gillett,* 33 Wash. 264, 74 Pac. 286. But it is contended that the most serious objection to the impeachment was that it was upon a collateral matter; citing *State v. Carroll,* 119 Wash. 623, 206 Pac. 563.

The impeaching evidence was not upon a collateral matter. It will be remembered that appellant had testified that the money with which he repaid the city, the $595, was taken from the safe in his office; that it and much more money was there; that he never had appropriated and converted to his own use, and never intended to. It was therefore in direct issue as to

whether or not the money that he repaid to the city was the money that he received, and which he said he had not used or converted. It was competent for the state to prove that he had made a statement inconsistent with innocence as to the appropriation of the fund, to the effect that he had received the money from another source to repay the city. *Sound Timber Co. v. Danaher Lum. Co.,* 112 Wash. 314, 192 Pac. 941.

The witness was not misled. His attention was directed to the identical occasion and conversation with Goran, and he denied that he had had any such conversation. Therefore, under the authorities, the rebuttal testimony was competent. 40 Cyc. 2731; *State v. Walters,* 7 Wash. 246, 34 Pac. 938, and *Sound Timber Co. v. Danaher Lumber Co., supra.*

Another urgent claim of appellant is that certain exhibits were introduced by the state which appellant contends were extraneous to any issue in the case and very prejudicial.

These exhibits were original requisitions, vouchers and checks showing sales of army goods stores to city employees by appellant. It will be remembered that appellant, on his direct examination, testified that he cashed the government check by mistake, thinking that it belonged to him because of the sales of army goods that he was handling for city employees, in 1919 and 1920; that the money was placed in his safe in the army goods compartment thereof; that he must have mixed the accounts up; that he was unable to produce any statement because his records had been mixed up and he had kept no record books.

Having injected the issue of his dealing in army supplies into the case, these exhibits were not extraneous. Having given his explanation of the transactions it was proper to cross-examine him and to show by his own records the status of his so-called army goods

stores account. The various vouchers were admissible for the purpose, and also to show that appellant did have records from which he could have checked his various accounts, and to show the time of his operations in army stores.

"The gist of the offense of larceny by embezzlement is the intent of the party charged to deprive or defraud the owner by withholding or appropriating his property. Any fact tending to prove or disprove that intent is properly admissible in evidence. The rule is stated in 15 Cyc. 529, as follows:

" 'Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other hand to show the *bona fides* of the accused.' " *State v. Ward,* 96 Wash. 550, 165 Pac. 794.

We think, therefore, that the evidence complained of was properly admissible. See, also, *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042; *State v. Leroy,* 61 Wash. 405, 112 Pac. 635; *State v. Kaukos,* 109 Wash. 20, 186 Pac. 269.

We can find no error justifying a reversal. The judgment of conviction is therefore affirmed.

Main, C. J., Tolman, Fullerton, and Parker, JJ., concur.