[No. 11260-8-III. Division Three. June 30, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD CHIARIELLO, *Appellant*.

*John Luke McKean* and *McKean Law Offices,* for appellant.

*John D. Knodell, Prosecuting Attorney,* for respondent.

THOMPSON, J. — Edward Chiariello appeals his conviction for first degree burglary. He assigns error to the instruction which advised the jury that first degree burglary is committed if the defendant enters or remains unlawfully in a dwelling, and in so doing, *either* is armed with a deadly weapon *or* assaults a person therein. *See* RCW 9A.52.020.[1] Mr. Chiariello contends there is insufficient evidence to support a finding he or another participant was armed with a deadly weapon. We affirm.

Viewed in the light most favorable to the State, the evidence is that on May 19, 1990, Jessie Cruz was awakened in his apartment by pounding on his door and windows. He heard someone yelling, "[W]e want to talk to you." When he opened his door, a man he identified as Sam Peterson punched him in the face. Another man, identified as David Cameron, grabbed him by the neck and pushed him back into his apartment. The two were accompanied by Edward

---

[1]RCW 9A.52.020 provides:

"(1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein."

Chiariello, who followed the others into Mr. Cruz' apartment and participated in beating Mr. Cruz. Mr. Cruz testified he believed the three men were looking for a TV and VCR owned by Mr. Cameron and allegedly stolen by one "Marcus" who had lived for a short time in the Cruz apartment.

Mr. Cruz was able to escape "[w]hen David Cameron was looking for his knife to kill me and he was searching his pocket and that's when I got a little bit of a chance and started screaming and I got away from them and went out the door." The prosecutor questioned Mr. Cruz:

Q: Now, David Cameron was looking for something?
A: Yeah, he was looking for his knife, that's what he said.
Q: And where was he looking?
A: In his pockets, searching himself.
Q: With his hands?
A: Yes.
Q: Who was holding you down during that time?
A: Chiariello.
Q: Okay. Did David Cameron find his knife?
A: He never did.

At the close of the State's case, Mr. Chiariello unsuccessfully moved to dismiss for insufficient evidence. He testified in the defense case that he hit Mr. Cruz, but he also said he had been drinking heavily at the time of the assault. The jury returned a general verdict finding Mr. Chiariello guilty of first degree burglary.

■ Was the evidence sufficient to submit the "deadly weapon" alternative to the jury? The term "armed", as used in RCW 9A.52.020, means that the weapon is readily available and accessible for use. *State v. Faille*, 53 Wn. App. 111, 113, 766 P.2d 478 (1988); *State v. Gotcher*, 52 Wn. App. 350, 353, 759 P.2d 1216 (1988). Here, the evidence is that Mr. Chiariello's accomplice was looking for his knife to kill Mr. Cruz. However, the knife was never produced. The jury could not logically infer from the accomplice looking for the knife that he had a weapon readily available and accessible for use. *See Faille*. The mere threat to use a weapon is insufficient to support a conviction of first degree burglary.

We therefore hold the evidence, even when viewed in the light most favorable to the State, could not convince a rational trier of fact beyond a reasonable doubt that Mr. Chiariello or another participant was armed with a deadly weapon. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980).

"If one of the alternative methods upon which a charge is based fails, the verdict must be set aside unless the court can ascertain that it was based on remaining grounds for which sufficient evidence was presented." *State v. Maupin*, 63 Wn. App. 887, 894, 822 P.2d 355 (citing *Green*, at 230), *review denied*, 119 Wn.2d 1003 (1992). *See also State v. Whitney*, 108 Wn.2d 506, 512, 739 P.2d 1150 (1987); *State v. McAllister*, 60 Wn. App. 654, 658, 806 P.2d 772 (1991). In this regard, we note Mr. Chiariello did not deny the assault, but relied upon the defense of diminished capacity, claiming he was intoxicated at the time the crime was committed. Because Mr. Chiariello admitted assaulting Mr. Cruz, it is certain the jury based its verdict on the assault, and not only on the "deadly weapon" alternative means. Thus, any error in submitting the latter alternative to the jury was harmless. *State v. Maupin, supra*, is distinguishable. There, the defendant did not admit to committing either one of the alternative means.

Mr. Chiariello raises two issues pro se. First, was the verdict affected by juror bias? He contends one of the jurors overheard a conversation between defense counsel, the prosecutor, and witness Sam Peterson. The record in this appeal does not reflect Mr. Chiariello's assertion; thus, we do not consider it. *See State v. Norman*, 61 Wn. App. 16, 27, 808 P.2d 1159, *review denied*, 117 Wn.2d 1018 (1991).

Second, was Mr. Chiariello prejudiced by the testimony of Deputy Pat Howland of the Grant County Sheriff's Office that he took a pair of handcuffs and a can of mace from him when he placed him under arrest? Defense counsel objected

on the basis of relevancy to the admission of these items as exhibits. The court sustained the objection and did not allow further questioning by the State relative to these items.

■ Deputy Howland's initial testimony about the items was volunteered; it was not the result of a specific question by the prosecutor. There was no opportunity for defense counsel to object before the testimony was given. The testimony was irrelevant, since there was no evidence tying the handcuffs and the mace to the assault and the burglary. However, an error not of constitutional magnitude is grounds for reversal only if the reviewing court determines it is reasonably probable the outcome of the trial would have been different had the error not occurred. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984). Given Mr. Chiariello's admission he hit Mr. Cruz, the dispositive issue involved his intoxication as it related to his defense of diminished capacity. The jury's resolution of this issue was not affected by its knowing that Mr. Chiariello had mace and handcuffs on him when he was arrested. The error did not prejudice Mr. Chiariello.

Affirmed.

SHIELDS, C.J., and MUNSON, J., concur.