[No. 13661-9-II. Division Two. February 19, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN G. DELMARTER, *Appellant.*

---

772

*Thomas E. Doyle* and *Robert M. Quillian,* for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney,* for respondent.

MORGAN, J. — Steven G. Delmarter appeals his conviction for attempting to elude a pursuing police vehicle. We reverse and remand for new trial.

On July 9, 1989, at about 11:30 p.m., Officer Adams of the Shelton Police Department was parked in a marked police vehicle when Delmarter's car went past. Because the car appeared to be speeding, Adams pulled out and followed.

After a few blocks, Adams turned on his emergency lights and siren, but the car did not stop. Adams testified that the car cut the corner as it made a left turn, then proceeded for about two blocks at about 45 to 50 m.p.h. in a 25 m.p.h. zone. Delmarter testified that he drove the two blocks at about 40 to 45 m.p.h.

When the car came to an intersection controlled by a stop sign, it slowed but did not stop. It turned right, proceeded one more block, then turned right again and stopped in front of Delmarter's house.

Delmarter apparently tried to hide by putting his head down on the passenger side of the front seat. Within moments, however, he was arrested.

The distance from where Adams turned on his lights and siren to Delmarter's house was about 3½ blocks. Those blocks are in a quiet residential area. The streets were empty except for Delmarter and Adams.

Delmarter was charged with attempting to elude a pursuing police vehicle in violation of RCW 46.61.024.[1] The case proceeded to jury trial, and without objection from Delmarter, the trial judge gave instruction 9. That instruction stated:

> A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a manner indicating a wanton or willful disregard for the lives or property of others.
>
> This inference is not binding upon you, and it is for you to determine what weight, if any, such inference is to be given.

Delmarter was convicted and now appeals. On appeal, he contends for the first time that the trial court erred by giving instruction 9.

## I

We take up two matters preliminarily. First, we define the terms to be used. Then, we focus the issue to be decided.

---

[1]RCW 46.61.024 provides:

"Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

"The license or permit to drive or any nonresident driving privilege of a person convicted of a violation of this section shall be revoked by the department of licensing."

## A

Instruction 9 is what is known as a presumption or inference instruction. Tautologically, such an instruction describes a presumption or inference.

■ Every presumption and inference has three components. The first is the fact from which the presumption or inference arises. It can be called the foundational fact, the basic fact, the predicate fact, or the evidentiary fact. *See Francis v. Franklin*, 471 U.S. 307, 314, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985) (predicate fact); *County Court of Ulster Cy. v. Allen*, 442 U.S. 140, 156, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979) (evidentiary fact, basic fact); *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989) (quoting *County Court of Ulster County*). Here, we call it the foundational fact.

The second is the fact that is established as a result of applying the presumption or drawing the inference. That fact is usually but not always an element of the crime charged. *See* Proposed Fed. R. Evid. 303(b), 56 F.R.D. 183, 212 (1972). Thus, it usually can be called the elemental fact. *County Court of Ulster Cy. v. Allen*, 442 U.S. at 156 (elemental fact); *State v. Jackson*, 112 Wn.2d at 875 (same). Alternatively, it can be called the presumed or ultimate fact. *See Francis v. Franklin*, 471 U.S. at 314 (presumed fact); *County Court of Ulster Cy. v. Allen*, 442 U.S. at 156 (ultimate fact); *State v. Jackson*, 112 Wn.2d at 875 (same). Here, it is an element of the crime, *compare* instruction 9 *with* RCW 46.61-.024, and therefore we call it the elemental fact.

The third is a "rational connection" or "rational relationship" between the first two. *State v. Jackson*, 112 Wn.2d at 875; *State v. Jeffries*, 105 Wn.2d 398, 442, 717 P.2d 722, *cert. denied*, 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986). Unless such a connection or relationship exists, a presumption or inference may not be submitted to or used by the trier of fact. *State v. Jeffries*, 105 Wn.2d at 442.

According to the terminology that we will use, a presumption can be mandatory or permissive, but an inference is permissive. *See* Graham, *Evidence and Trial Advocacy Work-*

*shop: Presumptions — More Than You Ever Wanted to Know and Yet Were Too Disinterested to Ask*, 17 Crim. L. Bull. 431 (1981). Thus, the terms "permissive presumption", "inference" and "permissive inference" are synonymous, and the term "permissive inference" is redundant. To approximately the same effect, *see State v. Jackson*, 112 Wn.2d at 874, 875. A mandatory presumption instruction describes a mandatory presumption, while an inference instruction describes a permissive presumption, inference or permissive inference.

### B

■ Two basic questions arise when the propriety of a presumption or inference instruction is challenged. One is whether the instruction is authorized by statute or common law. The other is whether the instruction, despite being authorized by statute or common law, is prohibited by the federal or state constitution.

Delmarter does not brief or argue the first question,[2] nor could he do so. Having failed to object at the trial level, he is limited in this court to arguments of constitutional magnitude. RAP 2.5(a).

Delmarter presents two arguments of constitutional magnitude. Relying on the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington Constitution,[3] he argues that instruction 9 violated due process of law. Relying on article 4, section 16 of the Washington Constitution, he argues that instruction 9 was a

---

[2]Both parties seem to assume that instruction 9 was authorized by RCW 46.61-.465. That statute provides:

"The unlawful operation of a vehicle in excess of the maximum lawful speeds provided in this chapter at the point of operation and under the circumstances described shall be prima facie evidence of the operation of a motor vehicle in a reckless manner by the operator thereof."

[3]Although Delmarter cites both the federal and state due process clauses, he offers no argument or analysis showing that they have different meanings. As a result, we hereinafter assume but do not hold that they have the same meaning. *State v. Palomo*, 113 Wn.2d 789, 794, 783 P.2d 575 (1989), *cert. denied*, 498 U.S. 826, 112 L. Ed. 2d 53, 111 S. Ct. 80 (1990); *State v. Wethered*, 110 Wn.2d 466, 472, 755 P.2d 797 (1988).

comment on the evidence. Because due process is dispositive, we do not reach article 4, section 16.

■■ Due process includes at least three ideas pertinent to presumption and inference instructions. First, due process prohibits the trial judge in a criminal case from directing a verdict for the State on any element of the crime charged. *Rose v. Clark*, 478 U.S. 570, 578, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986); *Sandstrom v. Montana,* 442 U.S. 510, 516 n.5, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73, 51 L. Ed. 2d 642, 97 S. Ct. 1349 (1977). A corollary is that the trial judge in a criminal case may not give a mandatory presumption instruction. *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). Because such an instruction requires the jury to find an elemental fact simply because a foundational fact has been proved, it "is in reality just a polite form of a partial directed verdict". *State v. Johnson*, 100 Wn.2d 607, 617, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985).

Second, due process prohibits the trial judge from instructing in a way that authorizes the jury to convict without first finding that each element of the crime charged has been proved beyond a reasonable doubt. *State v. Fowler*, 114 Wn.2d 59, 69, 785 P.2d 808 (1990) (constitution requires that jury be instructed on each element of crime), *disapproved on other grounds in State v. Blair*, 117 Wn.2d 479, 487, 816 P.2d 718 (1991); *State v. Scott*, 110 Wn.2d 682, 690, 757 P.2d 492 (1988) (due process usually met when jury informed all elements of offense must be proved beyond reasonable doubt); *State v. Johnson*, 100 Wn.2d at 623 (due process requires that instructions define every element of crime); *State v. McHenry*, 88 Wn.2d 211, 214, 558 P.2d 188 (1977) (due process requires reasonable doubt instruction). A corollary is that a presumption or inference instruction may not shift the burden of proof on any element from the State to the defendant, *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975);

*Francis v. Franklin, supra,* for that is simply one way of authorizing the jury to convict without first finding that each element of the crime has been proved to exist. *State v. Johnson,* 100 Wn.2d 607, 617, 674 P.2d 145 (1983) (shifting burden of proof effectively removes element from jury's consideration). The purpose is to assure, to the extent possible, that the jury will not convict except after reaching "a subjective state of near certitude" regarding each element of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 315, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

Third, due process prohibits the judge from inviting the jury to find one or more elements of the crime irrationally or arbitrarily. Thus, due process bars the judge from submitting the case to the jury (and thereby inviting the jury to find each element of the crime) when the evidence is such that no rational trier could find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319. Additionally, due process bars the judge from instructing on an inference (and thereby inviting the jury to find an element of the crime charged by drawing that inference) except when its foundational and elemental facts are "rationally connected". *County Court of Ulster Cy. v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979); *see Leary v. United States,* 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *Tot v. United States,* 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943). The purpose is to assure not only that the jury will reach a "subjective state of near certitude" before convicting, but that it will reach that state in a way that is not demonstrably irrational or arbitrary.[4] *Cf. County Court of Ulster Cy. v. Allen, supra; Leary v. United States, supra; Tot v. United States, supra.*

The first of these ideas is dispositive when an instruction describes a mandatory presumption, and therefore the "threshold inquiry" (*Sandstrom v. Montana,* 442 U.S. 510,

---

[4]It does not necessarily follow that the jury must reach its "subjective state of near certitude" in a way that is demonstrably rational. The jury is a "presumptively rational factfinder", *County Court of Ulster Cy.,* 442 U.S. at 157, and it will be deemed to have acted rationally unless the record shows to the contrary.

514, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979)) when considering a presumption or inference instruction is whether the instruction describes a mandatory presumption or an inference. *Francis v. Franklin,* 471 U.S. at 313-14; *Sandstrom v. Montana,* 442 U.S. at 514. It is necessary to reach the second and third ideas only if an instruction describes an inference.

In this case, instruction 9 clearly describes an inference rather than a mandatory presumption. Thus, the first idea is not dispositive, and the second and third ideas come into play.

The second idea plays a minor role here. Delmarter invokes it by contending that instruction 9 shifted the burden of proof on an element of the crime charged.[5] However, we disagree. Although instruction 9 was subject to the due process defect discussed below, it did not shift the burden of proof.

The third idea gives rise to the main issue. Delmarter invokes it by contending that the foundational and elemental facts in instruction 9 were not "rationally connected". We analyze the contention by addressing three questions.

II

The first question is how strong a "rational connection" must be in order to satisfy due process. As will be further discussed below, it seems obvious that the "rational connection" required for an inference instruction should be at least as strong as the "rational connection" required to submit,

---

[5]Delmarter also argues that instruction 9 was erroneous because it did not caution the jury that even if the jury drew the described inference, it could convict only if satisfied that each element of the crime had been proved beyond a reasonable doubt. *See State v. Savage,* 94 Wn.2d 569, 575, 618 P.2d 82 (1980); *State v. Bauer,* 92 Wn.2d 162, 169, 595 P.2d 544 (1979); *State v. Roberts,* 88 Wn.2d 337, 341, 562 P.2d 1259 (1977); *State v. Person,* 56 Wn.2d 283, 288, 352 P.2d 189, 81 A.L.R.2d 1088 (1960); *State v. Holcomb,* 31 Wn. App. 398, 402, 642 P.2d 407 (1982). In essence, this is a second contention based on the idea that the trial judge authorized the jury to convict without requiring that the jury first find each element of the crime beyond a reasonable doubt. Assuming without holding that instruction 9 was defective in this respect, we need not resolve whether the defect constituted constitutional or prejudicial error, for we dispose of the case on other grounds.

without an instruction, the inference that the instruction describes. Thus, we first discuss how strong a "rational connection" must be in order to submit an inference to the jury *without* an inference instruction. We then discuss how strong a "rational connection" must be in order to submit an inference to the jury *by means of* an inference instruction.

### A

As already noted, an inference cannot be submitted to the jury unless its foundational and elemental facts are "rationally connected". *State v. Jackson*, 112 Wn.2d at 875; *State v. Jeffries*, 105 Wn.2d at 442. By definition, an inference that lacks such a connection cannot be "rationally" used by the jury, and to submit it to the jury is to invite the jury to proceed irrationally. *See Jackson v. Virginia, supra.*

When an inference is not submitted to the jury as the sole basis for finding an element of the crime charged, it need only be relevant.[6] ER 402. An inference is relevant if its foundational fact has "any tendency" to prove its elemental fact. ER 401. Generally, then, an inference can be submitted to the jury if its foundational and elemental facts are "rationally connected" in such a way that a rational trier of fact taking the evidence in the light most favorable to the prosecution could find that the first has "any tendency" to make the second more or less probable. *See* ER 401.

When an inference is submitted to the jury as the sole basis for finding an element of the crime charged, it must be sufficient as well as relevant. *See Jackson v. Virginia, supra.* In a criminal case, an inference is sufficient only if a rational trier of fact taking the evidence in the light most favorable to the prosecution could find its elemental fact from its foundational fact beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319; *State v. Hoffman*, 116 Wn.2d 51, 82, 804 P.2d 577 (1991). Thus, in a criminal case an inference can be submitted to the jury as the sole basis for finding an element of the crime charged only if its foundational and

---

[6]In other words, an inference can be submitted to the jury for use in conjunction with other evidence so long as it is relevant.

elemental facts are "rationally connected" in such a way that a rational trier of fact taking the evidence in the light most favorable to the prosecution could find the second from the first beyond a reasonable doubt.

It follows that the "rational connection" required to submit an inference to the jury without a jury instruction varies according to whether the inference is being submitted as the sole basis for finding an element of the crime charged. If the inference is not being submitted as the sole basis for finding an element, it need only meet the "tendency" test of ER 401. If the inference is being submitted as the sole basis for finding an element, it must meet the reasonable doubt test of *Jackson v. Virginia, supra. See also State v. Hoffman, supra.* An inference is submitted as the sole basis for finding an element in at least two situations: (1) when it is submitted as the *only* basis for finding an element of the crime charged, *Jackson v. Virginia, supra; State v. Hoffman, supra,* or (2) when it is submitted as an *alternate,* independently sufficient basis for finding an element of the crime charged. *State v. Kitchen,* 110 Wn.2d 403, 410, 756 P.2d 105 (1988) (substantial evidence required for each "alternative means"); *In re Jeffries,* 110 Wn.2d 326, 336-38, 752 P.2d 1338 (same), cert. denied, 488 U.S. 948, 102 L. Ed. 2d 368, 109 S. Ct. 379 (1988); *State v. Chiariello,* 66 Wn. App. 241, 244, 831 P.2d 1119 (1992); *State v. Joy,* 65 Wn. App. 33, 42, 827 P.2d 1065 (1992); *State v. Maupin,* 63 Wn. App. 887, 894, 822 P.2d 355, *review denied,* 119 Wn.2d 1003 (1992); *State v. Miller,* 60 Wn. App. 767, 772, 807 P.2d 893 (1991); *see State v. Arndt,* 87 Wn.2d 374, 376-77, 553 P.2d 1328 (1976).

## B

The United States Supreme Court has held that when an inference "is not the sole and sufficient basis" (*County Court of Ulster Cy. v. Allen,* 442 U.S. at 167) for finding an element of the crime charged, the "rational connection" required to submit it by means of an inference instruction must be stronger than the "rational connection" required to submit it

without an instruction.[7] In *Ulster*, the Court had before it an instruction telling the jury it was permitted to infer, from the presence of a handgun in a car, the fact that every occupant of the car was illegally possessing the handgun. The Court read the instruction as telling the jury to take the described inference in conjunction with all of the other evidence. Thus, the described inference was neither the only basis nor an alternate basis for finding an element of the crime charged, and under ER 401 it could have been submitted to the jury without an instruction so long as it met a relevance or "tendency" test. The Court, however, held that the inference could not be submitted to the jury *by means of an instruction* unless the inference met a preponderance standard. *Ulster*, 442 U.S. at 165-67. According to the Court, the inference could be submitted to the jury by means of an instruction only if its foundational and elemental facts were connected strongly enough that "the latter is 'more likely than not to flow from' the former." 442 U.S. at 165. *See also Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *Tot v. United States*, 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943).

The United States Supreme Court has not directly spoken on how strong a "rational connection" must be when an inference is to be submitted, by means of an inference instruction, as the only or alternate basis for finding an element of the crime charged (*i.e.*, as "the sole and sufficient basis" for finding an element of the crime charged, *Ulster*, 442 U.S. at 167). However, the Court has never held, in any context, that the "rational connection" required to submit an inference by means of an instruction can be weaker than that required to submit the same inference without an instruction. Indeed, the very idea is nonsensical, for it defies logic to say that an inference not strong enough to be sub-

---

[7]The reason for this is not clear, but it may be to avoid undue emphasis. Arguably, enshrining an inference in an inference instruction invites the jury to give the described inference increased significance for no reason except the manner of its presentment.

mitted to the jury without an inference instruction can nevertheless be submitted to the jury by means of such an instruction.[8] Thus, if an inference must meet a reasonable doubt test to be submitted, without an instruction, as the only or alternate basis for finding an element of the crime, *Jackson v. Virginia*, 443 U.S. at 319; *State v. Hoffman*, 116 Wn.2d at 82, it also must meet a reasonable doubt test in order to be submitted, by means of an inference instruction, as the only or alternate basis for finding an element of the crime charged.

Language from *Ulster* tends to confirm this reasoning, because it implies that when an inference is "the sole and sufficient basis" (*Ulster*, 442 U.S. at 167) for finding an element of the crime charged, the "rational connection" required to submit it by means of a jury instruction must be stronger than a preponderance. In *Ulster*, the Court said:

> There is no more reason to require a permissive statutory presumption [in the terms we are using, a statutorily authorized permissive inference] to meet a reasonable-doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted. *As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt*, it need only satisfy the test described in *Leary*.[9]

(Italics ours.) 442 U.S. at 167.[10]

---

[8]This observation is validated somewhat by *County Court of Ulster Cy. v. Allen*, 442 U.S. at 167 (inference), *Leary v. United States*, 395 U.S. at 36 (presumption), and *Tot v. United States*, 319 U.S. at 467-68 (presumption). In each of those cases, the United States Supreme Court determined the constitutionality of a presumption or inference instruction by assessing the constitutionality of the presumption or inference that it described.

[9]The test described in *Leary* was preponderance.

[10]Just prior to the passage quoted in the text, the *Ulster* Court also said:
> In the latter situation, since the prosecution bears the burden of establishing guilt, it may not rest its case *entirely* on a presumption *unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt.*

(Italics ours.) 442 U.S. at 167. When read in light of *Jackson v. Virginia, supra*, decided 24 days after *Ulster*, this sentence implies that a reasonable doubt test will apply to instructions in which the described inference is the sole basis for finding

Like the United States Supreme Court, the Washington Supreme Court seems to have adopted a preponderance standard in cases in which the inference in an inference instruction is not the only or alternate basis for finding an element of the crime charged. In *State v. Jackson, supra*, the court said that an inference instruction must meet "at least" a preponderance test. 112 Wn.2d at 875 (quoting *Leary v. United States*, 395 U.S. at 36).

Like the United States Supreme Court, the Washington Supreme Court does not seem to have spoken on how strong a "rational connection" must be when the question is whether to give an inference instruction, and the inference described in the instruction is the only basis, or an alternate basis, for finding an element of the crime charged. Several aspects of *Jackson*, however, imply that more than a preponderance is necessary in such circumstances. First, the *Jackson* court spoke of a reasonable doubt test, 112 Wn.2d at 876, and there would have been no purpose in doing that if the court were intending to hold that every "rational connection" had to meet the preponderance test that it earlier had described. 112 Wn.2d at 875. Second, the *Jackson* court cited but did not question *State v. Odom*, 83 Wn.2d 541, 548, 520 P.2d 152, *cert. denied*, 419 U.S. 1013, 42 L. Ed. 2d 287, 95 S. Ct. 333 (1974) and *State v. Rogers*, 83 Wn.2d 553, 556, 520 P.2d 159, *cert. denied*, 419 U.S. 1053, 42 L. Ed. 2d 650, 95 S. Ct. 633 (1974), each of which previously had applied a reasonable doubt test. 83 Wn.2d at 548; 83 Wn.2d at 556. Third, the *Jackson* court reiterated *Leary*'s "at least" qualification of the preponderance test, 112 Wn.2d at 875 (quoting *Leary v. United States*, 395 U.S. at 36), which had been discarded 10 years earlier with respect to some inferences, *Ulster*, 442 U.S. at 167, and thus implied that more than a preponderance was still needed for some inferences. Finally,

---

an element of the crime charged. However, the meaning of this sentence is much confused, and therefore weakened, by the fact that the *Ulster* Court seems to have been considering the "latter situation" as one involving a mandatory presumption, rather than one involving an inference offered as the sole basis for finding an element of the crime charged.

the *Jackson* court struck down the instruction in issue without expressly saying whether it was applying a preponderance or reasonable doubt test. 112 Wn.2d at 876.

Based on logic and the foregoing authorities, we draw two conclusions about how strong the "rational connection" in an inference instruction must be. When the inference described in the instruction is neither the only basis nor an alternate basis for finding an element of the crime charged, the "rational connection" must be such that the elemental fact "is 'more likely than not to. flow from' the" foundational fact. *Ulster*, 442 U.S. at 165; *see also Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969); *Tot v. United States*, 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943). But when the inference described in the instruction is the only basis, or an alternate basis, for finding an element of the crime charged, the "rational connection" must be such that a rational trier of fact could find the elemental fact from the foundational one beyond a reasonable doubt. *Cf. Jackson v. Virginia*, 443 U.S. at 319; *State v. Hoffman*, 116 Wn.2d at 82.

### III

The second question is whether instruction 9 described an inference that was the only basis, or an alternate basis, for finding an element of the crime charged. In our view, it described an inference that was an alternate basis.

■ The rule is that jury instructions are to be read as a whole. *State v. King*, 92 Wn.2d 541, 546, 599 P.2d 522 (1979). In applying that rule here, we look to "the way in which a reasonable juror could have interpreted the instruction[s]", for that is what determines "whether a defendant has been accorded his constitutional rights". *Sandstrom v. Montana*, 442 U.S. at 514; *State v. Johnson*, 100 Wn.2d at 616.

Instruction 9 did not tell the jury to view the described inference in conjunction with all other relevant evidence. Rather, it plainly stated that the jury could infer driving with willful or wanton disregard from speed in excess of the speed limit, without more. It reinforced this statement by saying or implying that the jury could assign the described

inference any amount of weight, up to and including weight sufficient to overcome reasonable doubt.

Instruction 3 was an 11-paragraph "boilerplate" instruction. Its fifth paragraph stated:

In determining any proposition, you should consider all of the evidence introduced by all parties bearing on the question. Every party is entitled to the benefit of the evidence whether produced by that party or by another party.

■ In our view, a reasonable juror could and would have read instructions 9 and 3 as being consistent. Instruction 9 told the jury that it could find driving in a manner indicating willful or wanton disregard from speed in excess of the speed limit, while instruction 3 told the jury that it could find driving in a manner indicating willful or wanton disregard from all the evidence. Read together, the two instructions told the jury that it could find driving in a willful or wanton manner from *either* (a) speed in excess of the speed limit *or* (b) all the evidence. Thus, the legal effect of instruction 9 was to establish the inference that it described an alternate basis (alternate means) for finding an element of the crime charged.

Even assuming that a reasonable juror would have read instructions 9 and 3 as being in conflict, the same result follows. Instruction 3 stated in general terms that the jury should consider all the evidence bearing on each question. Instruction 9 stated in specific terms that speed alone could serve as an independently sufficient basis for finding driving in a manner indicating willful or wanton disregard for the lives or property of others. A reasonable juror could and would have read the more specific statement as controlling over the more general one. Thus, for purposes of due process, the two instructions again told the jury that it could find driving in a willful or wanton manner from *either* (a) speed in excess of the speed limit *or* (b) all the evidence, and the legal effect of instruction 9 was to establish the inference that it described an alternate basis (alternate means) for finding an element of the crime charged.

The trial court gave only one other instruction that might have altered the effect of instruction 9. Instruction 6 stated:

Willful means acting intentionally and purposely, and not accidentally or inadvertently.

Wanton means acting intentionally in heedless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable person would know or have reason to know that such conduct would, in a high degree of probability, harm the person or property of another.

However, a reasonable juror reading instructions 6 and 9 together could well have thought that he or she was permitted to infer, from *either* speed over the limit *or* all the evidence, driving in a manner indicating "intentional" or "purposeful" disregard for others or their property. Thus, instruction 6 did not alter the plain effect of instruction 9.

## IV

Because instruction 9 established an alternate basis for finding an element of the crime charged, the trial court could properly give it only if it contained a "rational connection" strong enough that a rational trier of fact taking the inference most favorably to the prosecution could find its elemental fact from its foundational fact beyond a reasonable doubt. *See State v. Kitchen*, 110 Wn.2d at 410; *In re Jeffries*, 110 Wn.2d at 336-38; *State v. Chiariello*, 66 Wn. App. at 244; *State v. Maupin*, 63 Wn. App. at 894; *State v. Miller*, 60 Wn. App. at 772; *State v. Arndt*, 87 Wn.2d at 376-77. Our third question, therefore, is whether the "rational connection" in instruction 9 was strong enough to meet this test. We start by identifying the elemental and foundational facts in instruction 9.

## A

Identifying the elemental fact is simple, for it can be taken from the face of the instruction. It is driving in a manner indicating willful or wanton disregard for the lives or property of others.

Identifying the foundational fact is more complex, for it involves the evidence before the court in addition to the wording of instruction 9. *County Court of Ulster Cy. v. Allen*,

*supra.* The general idea, mandated by *Ulster,* is that the foundational fact described in a challenged instruction is not specific enough for purposes of determining whether the instruction's elemental and foundational facts are "rationally connected". *See County Court of Ulster Cy. v. Allen, supra.* As a consequence, a court trying to decide whether the foundational and elemental facts are "rationally connected" must make the foundational fact more specific, and that is accomplished by looking at pertinent parts of the evidence actually before the court.

■ Implementation of this general idea involves several steps. The first is to glean a tentative "foundational fact" from the wording of the challenged instruction. As one commentator has said, "[T]he basic facts to be considered in applying the appropriate rational connection test are those referred to in the jury instruction actually given." Graham, *Evidence and Trial Advocacy Workshop: Presumptions — More Than You Ever Wanted to Know and Yet Were Too Disinterested to Ask,* 17 Crim. L. Bull. 431, 444-45 (1981); *cf. County Court of Ulster Cy. v. Allen,* 442 U.S. at 158 n.16 (wording of instructions affected outcome of United States Supreme Court cases).

The second step is to disregard hypothetical situations and focus instead on the evidence actually before the court. This is the main lesson of *County Court of Ulster Cy. v. Allen, supra,* in which the United States Supreme Court held that the foundational fact was to be identified not by conjuring up hypothetical situations, but by looking to the evidence actually produced.

The third step is to determine whether one or more versions of the foundational fact are eliminated from consideration by the wording of the challenged instruction. Suppose, for example, an eluding case in which the officer testifies that the defendant was driving 100 m.p.h. in a 25 m.p.h. zone; the defendant testifies that he was driving 30 m.p.h. in a 25 m.p.h. zone; and the trial court is asked to instruct as follows: "If you find that the defendant drove 100 m.p.h. in a 25 m.p.h. zone, you are permitted but not required to infer

that the defendant drove in a manner indicating willful or wanton disregard for the lives or property of others."[11] Because this instruction invites the jury to draw the described inference *only* if it finds the officer's version of the foundational fact, a "rational connection" is needed between the officer's version and the elemental fact, but not between the defendant's version and the elemental fact. Thus, the defendant's version of the foundational fact can be disregarded when identifying the foundational fact.

The final step is to define the foundational fact in accordance with that version of the remaining evidence which most disfavors the existence of a "rational connection". Suppose, for example, an eluding case in which the officer testifies that the defendant was driving 100 m.p.h. in a 25 m.p.h. zone; the defendant testifies that he was driving 30 m.p.h. in a 25 m.p.h. zone; and the trial court is asked to instruct as follows: "If you find that the defendant drove in excess of the maximum lawful speed at the point of operation, you are permitted but not required to infer that the defendant drove in a manner indicating willful or wanton disregard for the lives or property of others." Because this instruction invites the jury to draw the described inference if it finds *either* the officer's *or* the defendant's version of the foundational fact, a "rational connection" is needed between *both* (1) the officer's version and the elemental fact *and* (2) the defendant's version and the elemental fact; in the absence of *either* connection, the instruction effectively invites the jury to proceed irrationally and arbitrarily. The defendant's version is the one more disfavorable to the existence of a rational connection; if it is rationally connected with the elemental fact, the officer's version necessarily is also. Thus, it is enough to test the existence of a rational connection between the defendant's version and the elemental fact, and it is possible to do that by defining the foundational fact in accordance with the

---

[11]Because we do not reach Delmarter's comment-on-the-evidence contention, we express no opinion on whether an instruction worded this way would violate Const. art. 4, § 16. Here, we are considering only the "rational connection" test mandated by due process of law.

defendant's version — or, in more general terms, by defining the foundational fact in accordance with whatever version of the evidence most disfavors the existence of a rational connection.

Looking to the wording of instruction 9, we find that the tentative foundational fact is "driving in excess of the maximum lawful speed at the point of operation." Looking to the relevant evidence, we find two versions: The officer said the defendant's speed was 45 to 50 in a 25 m.p.h. zone, and the defendant said it was 40 to 45 in a 25 m.p.h. zone. The wording of the instruction did not eliminate either version from the jury's consideration. Thus, either version could have been accepted by the jury, and unless both were rationally connected with the elemental fact, the effect of the instruction was to invite the jury to find an element of the crime irrationally and arbitrarily. Both versions were rationally connected if the defendant's version was, so it is enough that we test whether his version was rationally connected with the elemental fact. To do that, we identify the foundational fact in accordance with the defendant's version, which means that the foundational fact for purposes of instruction 9 is driving 40 to 45 m.p.h. in 25 m.p.h. zone.

B

At long last, we can formulate the precise question that must be asked in order to determine whether instruction 9 met the "rational connection" test mandated by due process of law: Could any rational trier find, beyond a reasonable doubt, from speed of 40 to 45 m.p.h. in a 25 m.p.h. zone, without more, driving in a manner that indicates a willful or wanton disregard for the lives or property of others? Applying "reason and experience", *State v. Jackson*, 112 Wn.2d at 875 (quoting *Tot v. United States, supra*), we answer in the negative. A rational trier of fact simply could not find, beyond a reasonable doubt, from speed of 40 to 45 m.p.h. in a 25 m.p.h. zone, without more, driving in a manner indicating willful or wanton disregard for the lives or property of others.

## V

■ Having found that instruction 9 failed to meet the "rational connection" test, and thus violated due process, we now turn to whether the error can be characterized as harmless. Generally, constitutional error must be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Kitchen*, 110 Wn.2d at 409, 412.

The constitutional error involved here was giving the jury alternate factual bases, either of which could be used to find an element, when one of those bases was not supported by sufficient evidence. That sort of error is harmless only when the record clearly indicates that the jury did not rely on the basis that was not supported by sufficient evidence. *State v. Chiariello*, 66 Wn. App. at 244 (jury was instructed it could find first degree burglary by means of assault or by means of deadly weapon; defendant admitted assault; insufficient evidence to support deadly weapon was harmless error); *State v. Maupin*, 63 Wn. App. at 894 (implies lack of sufficient evidence to support one basis for committing crime will be harmless if by special verdict form jury shows it relied on different basis). Absent such indication, there is no way of knowing, beyond a reasonable doubt or otherwise, whether the jury used the basis that was not supported by sufficient evidence. *State v. Maupin*, 63 Wn. App. at 894.

Here, the record shows nothing about whether the jury employed the basis established by instruction 9 as its basis for finding driving with willful or wanton disregard. Thus, it is not possible to hold that instruction 9 was harmless beyond a reasonable doubt, and a new trial must be granted.

Reversed and remanded for new trial.

PETRICH, J., concurs.

SWANSON, J.[*] (concurring) — While initially persuaded otherwise, I now join the majority in reversing Delmarter's conviction.

---

[*]Judge Herbert A. Swanson is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

A recent federal case, *Schwendeman v. Wallenstein*, 971 F.2d 313 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 975 (1993), which I find persuasive if not controlling, supports my concurrence in the decision to reverse. In *Schwendeman*, a vehicular assault case, a permissive inference instruction identical to instruction 9 was given, which permitted the jury to infer reckless driving, an element of vehicular assault from evidence of excessive speed.[12] A Washington jury found him guilty of vehicular assault. The Court of Appeals affirmed and the Washington Supreme Court denied the motion for discretionary review. Federal habeas relief was rejected by the United States District Court. The Circuit Court of Appeals granted review and held that the permissive inference instruction was constitutionally defective, and reversed the denial of a writ of habeas corpus with instructions that it be granted unless, within a reasonable time, Schwendeman is granted a new trial.

According to the facts recited in the federal appeals court's opinion, Schwendeman, by his own admission, drove his pickup truck 37 m.p.h. in a 25 m.p.h. zone at night down a road with potholes. Other evidence indicated that his speed was in excess of 50 m.p.h. The testimony also indicated that he swerved his vehicle back and forth with four passengers riding in the back of his open-bed truck. He lost control of his truck and struck a telephone pole, injuring his passengers. The court said this was ample evidence to support the conviction. But the court interpreted instruction 7, the permissive inference instruction, as limited in its scope of the evidential facts to speed alone. The court said,

> But instruction number 7 isolated speed as the only circumstance needed to permit the jury to find reckless driving and thereby convict Schwendeman. The jury was told, in effect, that it could ignore all the other evidence, consider only the

---

[12]The trial court in *Schwendeman* gave the jury instruction 7, which states:
"A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner.
"This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given." *Schwendeman*, at 315.

evidence of Schwendeman's speed, and if it found Schwende-
man was exceeding the speed limit, that was enough to convict
him — not of speeding, but of reckless driving.

*Schwendeman*, 971 F.2d at 316.

If we interpret instruction 9 in the instant case in a
similar way, as I think we must, the instruction permitted
the jury to find an element of the crime charged without
considering all of the evidence presented at trial. Given that
limitation of the evidential scope of the challenged instruc-
tion, its validity depends upon the strength of the connection
between the proved fact of speed in excess of the maximum
(40 to 45 m.p.h. in a 25 m.p.h. zone) and the elemental fact
of willful and wanton disregard.[13] In *Schwendeman*, the
court utilized the "more likely than not" test and said,

> Although it is certainly true that excessive speed is proba-
> tive of a jury's determination of recklessness, here we cannot
> say with substantial assurance that the inferred fact of reck-
> less driving more likely than not flowed from the proved fact of
> excessive speed. Under *Ulster County*, the instruction was con-
> stitutionally deficient.

(Citations omitted.) *Schwendeman*, at 316.

Similarly here, I cannot say with substantial assurance
that the inferred fact of willful and wanton disregard more
likely than not flowed from the admitted fact of driving 40 to
45 m.p.h. in a 25 m.p.h. zone. Because instruction 9 did not
tell the jury to consider the inference in conjunction with all

---

[13]Apparently Delmarter did not request a *Sherman* instruction, nor does he
claim ineffective assistance of counsel for the failure to make such a request. *See
State v. Sherman*, 98 Wn.2d 53, 653 P.2d 612 (1982). A necessary part of an
eluding a police vehicle case is proof that the defendant manifested willful and
wanton disregard for the lives and property of others, which has both objective
and subjective components. The *Sherman* court held that the defendant may
rebut the inference of willful disregard and is entitled to an instruction telling
the jury that circumstantial evidence of his driving creates only a rebuttable
inference that the defendant had "wanton and wilful disregard". It appears that
Delmarter offered some evidence tending to rebut the State's evidence. He
testified that he was listening to his 6-speaker stereo, which was really cranked
up. He said he saw the police car but did not hear the siren and did not think
they were chasing him. *See State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987),
which held that the failure to request a *Sherman* instruction amounted to a
denial of effective assistance of counsel.

relevant evidence, but instead isolated speed as the only consideration, the rational relationship was weakened to the point that it fails even the preponderance test.

I conclude that instruction 9 is constitutionally deficient and concur in the decision to reverse.