[No. 12080-5-III. Division Three. May 17, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. PAMELA R.
REID, *Appellant.*

*Brian C. O'Brien, Charles S. Dorn,* and *Brian O'Brien, P.S.,* for appellant.

*Ray D. Lutes, Prosecuting Attorney,* for respondent.

SWEENEY, J. — Pamela R. Reid and Carmen Correll, an elderly widow, became friends in 1986. In 1987, Ms. Reid began asking Mrs. Correll for money. During the next few years, Mrs. Correll wrote checks to Ms. Reid, or on her behalf, in the amount of $21,641.69. In her check register, Mrs. Correll noted that the checks were loans. Ms. Reid repaid $5,273.23. After Mrs. Correll's family learned of the transfers of money to Ms. Reid, they notified authorities and the State charged Ms. Reid with first degree theft.[1] At trial, the jury was instructed that "[f]raudulent intent may be inferred from the retention for a long period of time of property to which one has no right". The jury returned a verdict of guilty.

---

[1] RCW 9A.56.030 provides:

"(1) A person is guilty of theft in the first degree if he commits theft of:

"(a) Property or services which exceed(s) one thousand five hundred dollars in value;"

On appeal, Ms. Reid contends (1) the inference instruction relieved the State of its burden of proving each element of the offense; (2) the conviction was based solely upon her failure to pay a debt and therefore violated the state constitution; (3) the statute of limitation barred prosecution for conduct occurring 3 years before the date of the information; and (4) the issue of whether the conduct constituted a common scheme or plan was not before the jury. Because we hold the inference instruction violated Ms. Reid's right to due process, we reverse and remand for retrial.

### FACTS

Ms. Reid and Mrs. Correll became friends in 1986. They were close companions and saw each other two to three times a week. Ms. Reid spent holidays with Mrs. Correll's family.

In 1987, Ms. Reid began asking Mrs. Correll for money.

Mrs. Correll felt sorry for Ms. Reid and thought she could help by giving her money. She paid many of Ms. Reid's expenses, including car repairs, school tuition, books, feed for horses, rent and utility bills, lawn mowing, groceries, and telephone bills. To avoid repossession of Ms. Reid's washer, clothes dryer, range and refrigerator, Mrs. Correll paid $1,648 to an appliance store.

Mrs. Correll wrote checks totaling $21,641.69 to Ms. Reid or on her behalf. When writing the checks, Mrs. Correll noted in her register the money was "for Pam". She never asked Ms. Reid to repay the money nor did she calculate the exact amount Ms. Reid owed. No promissory note was signed, but occasionally Ms. Reid would say, "I'll pay . . . this back some day". When Ms. Reid repaid some money, Mrs. Correll noted the payment in her check register. She repaid a total of $5,273.23.

By information dated January 29, 1991, Ms. Reid was charged with first degree theft of property exceeding $250 but less than $1,500 for the period on or about February 1, 1988, to July 30, 1990. An amended information was filed on April 22 charging Ms. Reid with first degree theft of an

amount exceeding $1,500 for the same period. On May 21, the date set for trial, the State again amended the information to charge Ms. Reid with first degree theft between August 1, 1987, and July 30, 1990. Ms. Reid objected, arguing the 3-year statute of limitation applied. The court allowed the amendment and the matter proceeded to trial.

Ms. Reid testified it was her understanding she would repay Mrs. Correll when she graduated from Washington State University and had a stable, full-time job. The jury returned a verdict of guilty. Ms. Reid appeals.

FRAUDULENT INTENT INSTRUCTION

The court instructed the jury that "[f]raudulent intent may be inferred from the retention for a long period of time of property to which one has no right". Ms. Reid first contends the instruction effectively relieved the State of its burden of proving, beyond a reasonable doubt, each element of the crime. She maintains the instruction created a mandatory presumption which violated her right to due process.[2] *Sandstrom v. Montana*, 442 U.S. 510, 517, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

■■ Mandatory Presumptions. A presumption refers to a legal conclusion — if fact A (the basic fact) is proved at trial, the court assumes, as a rule of law, that fact B (the presumed fact) is true until it is rebutted by the opposing party. *State v. Jackson*, 112 Wn.2d 867, 873, 774 P.2d 1211 (1989); *State v. Savage*, 94 Wn.2d 569, 573, 618 P.2d 82 (1980); 5 Karl B. Tegland, Wash. Prac., *Evidence Law and Practice* § 65, at 179 (3d ed. 1989).

A mandatory presumption "instructs the jury that it '*must* find the [presumed] elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts.'" *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994) (quoting *County Court of Ulster Cy. v. Allen*, 442 U.S. 140, 157, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979)).

---

[2]The fourteenth amendment to the United States Constitution provides in relevant part: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law;"

Mandatory presumptions may not shift the burden of proof on any element of the offense because to do so conflicts with the overriding presumption of innocence and invades the fact finding function. *Savage*, at 573; *State v. Delmarter*, 68 Wn. App. 770, 776, 845 P.2d 1340 (1993) (citing *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985)).

The instruction here allowed, but did not require, that the jury find fraudulent intent. The instruction is not a mandatory presumption. *See State v. Shipp*, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980) (not a mandatory presumption to advise the jury it was permitted but not required to find knowledge when a reasonable person would have knowledge).

Inferences. Inferences are by definition permissive.[3] They permit, but do not require, the trier of fact to infer an element of the offense from an evidentiary fact. *Savage*, at 574. The use of an inference does not relieve the State of its burden to prove each element of the crime because "the State must still convince the jury the suggested conclusion should be inferred from the basic facts proved." *Hanna*, at 710; *State v. Johnson*, 100 Wn.2d 607, 617, 674 P.2d 145 (1983) (inference may not shift the burden of proof on any element from the State to the defendant), *overruled on other grounds in State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985); 5 Tegland, at 181-82.

To determine whether an inference instruction violates a defendant's right to due process of law, we must determine whether the instruction was only part of the State's proof supporting an element of the crime or whether the State relied solely on the inference. *Hanna*, at 710-11. If the inference was only part of the proof, due process requires the "presumed fact to flow 'more likely than not' from proof of the basic fact." *Hanna*, at 710 (quoting *Ulster*, 442 U.S. at 165, 167). If, on the other hand, the inference was the sole basis for a finding of guilt, *Hanna* suggests the inference

---

[3]The terms permissive presumption, permissive inference and inference are synonymous; the term permissive inference is redundant. *Delmarter*, at 774.

must satisfy the stringent reasonable doubt standard. *Hanna*, at 711; *see Delmarter*, at 784-85.

In *Hanna*, four eyewitnesses saw a vehicle being driven by Mr. Hanna racing with another car at speeds in excess of 80 m.p.h. Mr. Hanna's vehicle swerved across the median into oncoming traffic. Several accident reconstruction experts testified. One opined that Mr. Hanna's vehicle was traveling at 103 m.p.h. Mr. Hanna testified he was traveling at about 75 m.p.h. The court instructed the jury that "[a] person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner." *Hanna*, at 709 (quoting WPIC 95.03). Mr. Hanna argued that the inference instruction relieved the State of its burden to prove each element of the offense. The Supreme Court held the reckless inference instruction was only part of the prosecution's proof of guilt and concluded the "more likely than not" standard applied.

In a companion case, *State v. Kenyon*, 123 Wn.2d 720, 871 P.2d 144 (1994), the jury was also given an instruction which allowed it to infer reckless driving. There, the State introduced evidence that Mr. Kenyon was driving 43 to 60 m.p.h. in a 30 m.p.h. zone, at night, on a slippery road surface, with a flat tire and two overinflated tires. A witness testified Mr. Kenyon's car was " 'sashaying all over the road' ". *Kenyon*, at 722. Having concluded the inference instruction was part of the State's proof, the Supreme Court determined the instruction was proper because the "elemental fact of reckless driving more likely than not flowed from the proved fact of Kenyon's excessive speed." *Kenyon*, at 724.

Here, the State maintains the inference of fraudulent intent was not the sole proof of intent to deprive and therefore the lesser preponderance standard should apply. It argues other evidence included Ms. Reid's obtaining money from another person at the same time she was obtaining money from Mrs. Correll, her 1982 felony conviction for issuance of a nonsufficient funds check, and her lying to police when she said Mrs. Correll did not pay her rent. We disagree.

The fact Ms. Reid may have obtained money from another person at the same time she was receiving money from Mrs. Correll does not establish that she did not intend to repay Mrs. Correll. The 1982 conviction does not establish Ms. Reid's fraudulent intent to deprive Mrs. Correll. Nor does the fact Ms. Reid initially lied to police establish that she obtained money from Mrs. Correll with fraudulent intent. If proven, the conviction and the lie to police are relevant only on the issue of Ms. Reid's credibility at trial.

Therefore, unlike *Hanna* and *Kenyon*, the inference here is the sole basis for a finding of guilt. Accordingly, we must determine whether "a rational trier of fact taking the evidence in the light most favorable to the prosecution could find its elemental fact from its foundational fact beyond a reasonable doubt."[4] *Delmarter*, at 779; *see Hanna*, at 710-11. Said another way, could a rational trier of fact find, beyond a reasonable doubt, that Ms. Reid had a fraudulent intent to deprive Mrs. Correll of the moneys received (without a signed promissory note, payment schedule or request for payment) because she had paid back only $5,273.23 and had retained the balance for a "long time"? We think not. Retention of a loaned item of property, without more, does not indicate a fraudulent intent even if the property is retained for a "long time". Proof of the basic fact does not establish the presumed fact beyond a reasonable doubt. *Hanna*, at 711; *Delmarter*, at 784.

We disagree with the State's argument that the language of the fraudulent intent instruction was approved in *State v. Bryant*, 73 Wn.2d 168, 437 P.2d 398 (1968). In *Bryant*, the defendant was allowed to take a newly purchased vehicle home after explicit instructions to return the next day so that the necessary sales papers could be completed. Despite numerous attempts to locate him, the defendant failed to return. Notes were left at his place of employment, at his residence and on the vehicle. Without notice, the defendant

---

[4]The elemental fact is the one which is established as a result of drawing the inference. The foundational component of the inference is the basic, predicate fact from which the inference arises. *Delmarter*, at 774.

moved out of his rooming house and took the vehicle out of the state.

The court in *Bryant* gave only a cursory review of the propriety of giving the instruction, merely stating "[t]his language is used in the court's opinion in *State v. Sullivan*, 129 Wash. 42, 51, 224 Pac. 586 (1924). We deem it appropriate *in the instant case*, for it is germane to a determination of defendant's intent on the evening in question." (Italics ours.) *Bryant*, at 172. *Bryant* should be limited to its facts.

In *Sullivan*, the case relied upon in *Bryant*, the defendant, in his business capacity, came into possession of a check through a mistaken delivery. He concealed the check for 9 months before negotiating it. The decision is not clear whether an inference instruction was even given. In a brief discussion, the court observed:

> Whether the retention and concealment of the money for a long period of time warranted the inference of fraudulent intent was a question of fact for the jury under all the circumstances shown in the case. *A jury may certainly infer a fraudulent intent from the retention for a long period of time, without a satisfactory explanation, of money to which one admittedly has no right.*

(Italics ours). *State v. Sullivan*, 129 Wash. 42, 51, 224 P. 586 (1924).

 We agree it is for the jury to determine whether a defendant has a fraudulent intent to deprive. However, the propriety of giving a fraudulent intent inference instruction depends upon the facts in each case. Given the facts in *Bryant*, it was appropriate for the court to instruct the jury that fraudulent intent may be inferred. Mr. Bryant had violated the terms on which he received the newly purchased vehicle. He ignored notices and all efforts to locate him before leaving the state with the vehicle. *Bryant* limited the application of the fraudulent intent language to the facts presented.

The material facts in *Bryant* and *Sullivan* are different than those presented here. Ms. Reid and Mrs. Correll were friends. There is evidence that Mrs. Correll knew that despite Ms. Reid's need for money, she was attending col-

lege, kept horses and dogs, and subscribed to a vast array of magazines. Mrs. Correll believed she was helping a friend. She was aware Ms. Reid was receiving money from other sources. Ms. Reid did not fail to comply with the terms of the loan. She did not ignore any request for repayment; there was no such request. Ms. Reid did not disappear without notice. To the contrary, she repaid a portion of the money she had borrowed.

The instruction allowing the jury to infer, as the sole source of evidence, that Ms. Reid had a fraudulent intent from these facts deprived Ms. Reid of her constitutional right to due process because the State was relieved of its burden of proving each element of the crime.

■ Harmless Error. Having so concluded, we must next determine whether the error was harmless. Constitutional error may be characterized as harmless, if beyond a reasonable doubt, the "record clearly indicates that the jury did not rely on the basis that was not supported by sufficient evidence". *Delmarter*, at 790; *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). There is no way of knowing beyond a reasonable doubt whether the jury relied on the improper basis. Clearly, the error in giving the instruction was not harmless. The case is reversed and remanded for a new trial.

### IMPRISONMENT FOR DEBT

Ms. Reid next contends she is being imprisoned for failure to pay a debt. *State v. Pike*, 118 Wn.2d 585, 826 P.2d 152 (1992). She maintains the conviction violated article 1, section 17 of our state constitution which states, "[t]here shall be no imprisonment for debt, except in cases of absconding debtors." We address this and Ms. Reid's other assignments of errors as they may be relevant on retrial.

■ Absent a specific statute or contractual fraud, one cannot be imprisoned for failure to pay a debt. *Pike*, at 595; *State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166 (1992). One who acts fraudulently, however, may be imprisoned because he or she is punished for the wrong which has been per-

petrated, not for the failure to pay. *State v. Higgins*, 67 Wn.2d 147, 153, 406 P.2d 784 (1965), *cert. denied*, 385 U.S. 827 (1966).

Here, Ms. Reid was not imprisoned because she did not pay her debt to Mrs. Correll. She was punished because the jury found her guilty of obtaining funds by color or aid of deception in violation of RCW 9A.56.020(1)(b). The conviction does not violate article 1, section 17 of our state constitution.

### Statute of Limitation

Ms. Reid next contends the statute of limitation barred prosecution for the alleged thefts occurring before May 21, 1988 (3 years prior to the date the second amended information was filed). She argues that Mrs. Correll wrote one check totaling $1,648 on her behalf on January 28, 1988. Ms. Reid concludes that her conviction may be based solely on this check which is outside the statute of limitation period.

██ The statute of limitation for theft is 3 years. RCW 9A.04.080(1)(g). When property is stolen from the same owner by a series of acts, there may be a series of crimes or a single crime, depending upon the facts and circumstances of each case. *State v. Brisebois*, 39 Wn. App. 156, 692 P.2d 842 (1984) (relying on *State v. Vining*, 2 Wn. App. 802, 808, 472 P.2d 564, 53 A.L.R.3d 390 (1970)), *review denied*, 103 Wn.2d 1023 (1985).

If each taking is a separate, independent criminal impulse or intent, each taking is a separate crime. *Vining*, at 808. If, instead, successive takings are the result of a single, continuing, criminal impulse and are done pursuant to the execution of a general larcenous scheme or plan, the successive takings constitute a single larceny regardless of the time which may elapse between each taking. *Vining*, at 808-09. A continuing crime is not completed until the criminal impulse is terminated. Consequently, the statute of limitation does not begin to run until the crime is completed. *Brisebois*, at 163 (citing *State v. Carrier*, 36 Wn. App. 755, 758, 677 P.2d 768 (1984)).

RCW 9A.56.010(12)(c) allows the State to aggregate smaller transactions if the transactions are part of a common scheme or plan.[5] Aggregation is permitted if "all the thefts were from the same victim over a period of time . . .". *State v. Meyer*, 26 Wn. App. 119, 124, 613 P.2d 132 (1980).

Whether successive takings constitute a single act of theft is for the jury to decide. *Vining*, at 809; *Meyer*, at 124.

Here, the jury was instructed that in order to convict Ms. Reid of theft in the first degree it had to find, beyond a reasonable doubt, that the property she obtained control over "exceeded $1500 in value and was taken through a common scheme or plan". Instruction 9. The jury was further advised that

> [t]he state has alleged that several thefts occurred over a period of time and has charged them in the aggregate as one crime. In order to convict the defendant of the crime charged, you must all agree on a sufficient number of these thefts until they meet or surpass $1,500 in value.

Instruction 10. The jury here found a common scheme or plan. Thus, the statute of limitation did not begin to run until Mrs. Correll wrote her final check to Ms. Reid in July 1990.

Ms. Reid concedes on appeal that her conviction does not violate the statute of limitation if the series of thefts involved a continuing criminal impulse which was terminated within the 3-year statute of limitation. She did not argue at trial, and does not argue on appeal, that each taking was the result of a separate intentional act or an independent impulse. *See Carrier*, at 757. Nor did she request at trial a special verdict form which would have indicated which transaction the jury relied upon in reaching its verdict. *State v. Washington*, 64 Wn. App. 118, 124 n.2, 822 P.2d 1245 (if a defendant has failed to request an

---

[5]RCW 9A.56.010(12)(c) provides:

"Whenever any series of transactions which constitute theft, would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are a part of a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved."

instruction, it is not error for the court to fail to give it), *review denied,* 119 Wn.2d 1003 (1992). Because the alleged thefts were part of a common scheme or plan, the statute of limitation does not bar the prosecution of the thefts occurring before May 21, 1988.

## COMMON SCHEME OR PLAN

Finally, Ms. Reid contends the issue of whether the series of checks constituted a common scheme or plan was not placed before the jury. We disagree.

■ As discussed above, the jury was instructed it had to find beyond a reasonable doubt that the property exceeded $1,500 and was taken through a common scheme or plan. Common scheme or plan is not an element of first degree theft, *State v. Stanton,* 68 Wn. App. 855, 863, 845 P.2d 1365 (1993), and need not be defined for the jury. *State v. Tyler,* 47 Wn. App. 648, 650, 736 P.2d 1090 (1987) (jury must be instructed on each element of the crime), *overruled on other grounds in State v. Delcambre,* 116 Wn.2d 444, 805 P.2d 233 (1991).

■ Moreover, Ms. Reid did not object at trial to the court's failure to define common scheme or plan. Before error may be claimed on the basis of a trial court's jury instruction, the party challenging the instruction must first show an exception was taken to the instruction in the trial court. *State v. Bailey,* 114 Wn.2d 340, 345, 787 P.2d 1378 (1990). There is no error.

The conviction of first degree theft is reversed and the matter is remanded for a new trial.

THOMPSON, C.J., and SCHULTHEIS, J., concur.